**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 26 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

vs.

DELFIN EDUARDO TORO-PELAEZ,

       Defendant - Appellant.

No. 96-3102

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-CR-10126)

Cyd Gilman, Assistant Federal Public Defender, Wichita, Kansas, for Defendant - Appellant.

David M. Lind, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff - Appellee.

Before EBEL, Circuit Judge, WHITE,[*] Associate Justice (Ret.), and KELLY, Circuit Judge.

KELLY, Circuit Judge.

---

    [*] The Honorable Byron R. White, Associate Justice of the Supreme Court of the United States (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

Delfin Eduardo Toro-Palaez appeals from his conviction for unlawful possession of 200 kilograms of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

Background

On December 10, 1994, Kansas Highway Patrol Troopers Greg Jirak and Richard Jimerson were stopped in the median of Interstate 70 near WaKeeney, Kansas, facing westbound traffic. They were talking with a trooper in another patrol car which was facing the eastbound traffic. From this vantage point, the troopers observed Mr. Toro as he traveled eastbound in a homemade-flatbed pickup truck. Trooper Jimerson testified that he immediately told his colleagues, "That truck's got a false compartment on it." The troopers decided to get a closer look, and Trooper Jimerson pulled the car into traffic. They caught up with Mr. Toro and followed him for a time, driving in the passing lane next to him.

This opportunity for closer observation "absolutely confirmed [Trooper Jimerson's] suspicion." While driving next to the truck, Trooper Jimerson focused on an unexplained space between the bed of the truck and the bottom of the truck's sidewalls, which indicated to him that the truck had a false bed and a concealed compartment. He also thought that the frame rails on the truck were unusual. Both troopers had prior experience with traffic stops involving vehicles with hidden compartments, and both

- 2 -

testified that every hidden compartment they had seen contained contraband or drug residue or proceeds.

The troopers also observed that Mr. Toro was following too closely behind the car in front of him. The troopers timed the distance between the cars, confirmed that a traffic violation was occurring, and pulled Mr. Toro over. Both troopers testified, however, that the reason for the stop was to investigate the possibility that Mr. Toro was transporting drugs in the concealed compartment.

Trooper Jirak approached the truck, told Mr. Toro that he had been stopped for a traffic violation, and obtained his driver's license and registration. Mr. Toro advised that he was coming from Denver, where he had been visiting and working for his brother, who was in the oil business. In fact, Mr. Toro was driving from Los Angeles via Burlington, Colorado, and had no brother in Denver. When Trooper Jimerson examined the truck more closely, he confirmed that it had a concealed compartment.

Trooper Jirak testified that Mr. Toro responded to questions in English, and that although he surmised that English was probably not Mr. Toro's native language, he nevertheless concluded that Mr. Toro was capable of understanding and communicating in English.

Trooper Jimerson joined Trooper Jirak and Mr. Toro in the patrol car, and asked Mr. Toro if the truck contained a concealed compartment. Mr. Toro denied knowledge of such a compartment, and consented to a search. The search revealed five million dollars

worth of cocaine (200 kilograms) in the concealed compartment under the truck bed. The troopers informed Mr. Toro that he was under arrest, and advised him of his Miranda rights. Although Mr. Toro did not respond after being read his rights, he did not indicate in any way that he did not understand them, nor did he request an attorney. When Trooper Jimerson asked if he would cooperate, Mr. Toro informed the troopers that he was afraid that his family would be harmed if he did. Mr. Toro subsequently said that he did not wish to incriminate himself and asked for a lawyer. He was not questioned further.

Mr. Toro was charged with unlawful possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The primary issue at trial was whether Mr. Toro had knowledge of the cocaine found in his truck. Mr. Toro testified, and denied knowledge of the cocaine. He told the jury of a person he knew only as Jorge, who had lent him $8,000 and promised him a job as a driver if he moved from New York City to Kansas City, Missouri. Mr. Toro relocated, and purchased a truck. He admitted to several different "white lies" that he told in order to obtain a local address, a Missouri driver's license, and vehicle registration and insurance. In December 1994, Mr. Toro was to drive his first trip for Jorge. He was told to meet Jorge in Los Angeles, but when he arrived, Jorge told him that there had been a delay of a few days and took possession of the truck. When Mr. Toro next saw his truck, the homemade flatbed and sidewalls had been added, but the flatbed was empty. Mr. Toro was told that there was no merchandise

to transport, and that he should drive the truck back to Kansas City, park it in a safe place, and Jorge would pick up the truck. En route to Kansas City, Mr. Toro was stopped by the troopers. Mr. Toro testified that he had come to believe that Jorge was responsible for the cocaine found in the hidden compartment of his truck.

The jury found Mr. Toro guilty, and the district court sentenced him to 235 months imprisonment. The court denied Mr. Toro's motion for a new trial.

## Discussion

Mr. Toro raises four issues in this appeal. First, he argues that the troopers did not have reasonable suspicion of criminal activity before making the traffic stop. Second, he argues that use of statements he made to the troopers after he was warned of his Miranda rights was a violation of those rights. Third, he argues that the prosecutor violated his right to remain silent by using his silence against him at trial. Last, he argues that the district court erred in denying his motion for a new trial.

## I. Reasonable Suspicion

Mr. Toro first argues that the troopers lacked the reasonable suspicion required by the Fourth Amendment to make a traffic stop, and that the district court therefore erred in denying his motion to suppress the evidence of the cocaine discovered in his truck.

A traffic stop is a seizure within the meaning of the Fourth Amendment. For purposes of constitutional analysis, it is characterized as an investigative detention, which requires reasonable suspicion of criminal activity before a seizure can be made, rather than a full custodial arrest, which requires probable cause. Berkemer v. McCarty, 468 U.S. 420, 439 (1984). Terry v. Ohio, 392 U.S. 1, 19-20 (1968), announced a two-pronged inquiry to be used to analyze the reasonableness of an investigative detention. The first prong of the inquiry considers whether the stop was justified at its inception. Id. at 20; United States v. Lee, 73 F.3d 1034, 1038 (10th Cir. 1996). The second prong of the Terry analysis considers whether the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference. Terry, 392 U.S. at 20; Lee, 73 F.3d at 1038. While the second prong of the Terry inquiry is not a matter of dispute in this appeal, Mr. Toro argues that the stop was not justified at its inception.

Although the troopers determined before pulling Mr. Toro over that he had committed a traffic violation, the government does not rely upon that violation to justify the stop. Indeed, Trooper Jimerson testified that he intended to stop Mr. Toro regardless of whether he committed the traffic violation. Because the traffic violation was not asserted below as a justification for the stop, the stop comported with the Fourth Amendment only if the officers had reasonable suspicion of criminal activity prior to making the stop. United States v. Lambert, 46 F.3d 1064, 1069 (10th Cir. 1995); see also Lee, 73 F.3d at 1038 (citing Terry, 392 U.S. at 21). In this case, the lone fact or

circumstance asserted as justification for the stop was the troopers' suspicion, prior to pulling Mr. Toro over, that his truck had a concealed compartment.

In reviewing a district court's decision on a motion to suppress, we accept the factual findings of that court unless they are clearly erroneous. United States v. Foster, 100 F.3d 846, 849 (10th Cir. 1996); United States v. Moore, 91 F.3d 96, 97 (10th Cir. 1996). We view the evidence in the light most favorable to the district court's findings. Foster, 100 F.3d at 849. Moreover, "the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." Id. (citing United States v. Fernandez, 18 F.3d 874, 876 (10th Cir. 1994)). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which we review de novo. Id. at 849. Mr. Toro appears to challenge both the district court's findings of fact as well as its legal conclusions.

When ruling on a motion to suppress involving factual matters, Fed. R. Crim. P. 12(e) requires a district court to "state its essential findings on the record." See also Fed. R. Crim. P. 41(f). Mr. Toro argues that the district court's order denying the suppression motion provides an insufficient basis for this court's review because it contains no findings regarding the testimony of a witness presented by the defendant. The witness had experience with the design, sale, and installation of truck beds, and the import of his testimony was that the only view which permitted a conclusion that Mr. Toro's truck had

a concealed compartment was one which the troopers did not have until after they stopped the truck: the view of the underside of the bed.

Mr. Toro's challenge to the district court's findings must fail. While helpful to appellate review, Rule 12(e) does not require detailed findings of facts as long as the essential basis of the court's decision is apparent. United States v. Comosona, 614 F.2d 695, 697 (10th Cir. 1980); 8 Moore's Federal Practice § 12.04[1], at 12-44 to -45 (1996). Both Trooper Jimerson and Trooper Jirak testified at the suppression hearing that they observed outward manifestations of the existence of a hidden compartment on Mr. Toro's truck when it passed them as they sat in the median and as they drove beside it. Although the troopers' testimony is at odds with that of the defendant's witness, when "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). Implicit in the district court's order denying Mr. Toro's motion to suppress is the court's resolution of credibility issues in favor of the troopers. See United States v. Mitchell, 951 F.2d 1291, 1299 (D.C. Cir. 1991), cert. denied, 504 U.S. 924 (1992). We therefore cannot say that the district court's factual findings are clearly erroneous.

We next address Mr. Toro's challenge to the district court's legal conclusion that the outward manifestations of the existence of a hidden compartment gave the troopers reasonable suspicion to seize and search the truck. Recent Fourth Amendment cases in this circuit and others have determined that evidence of a concealed compartment can

give rise to reasonable suspicion of criminal activity.  See, e.g., United States v. Orrego-Fernandez, 78 F.3d 1497, 1504-05 (10th Cir. 1996); see, e.g., United States v. Martel-Martines, 988 F.2d 855, 858-59 (8th Cir. 1993) (the suspicion of a concealed compartment contributed to a finding that a warrantless search was supported by probable cause).  Orrego-Fernandez held that a traffic stop based only upon alterations to the exterior of a vehicle which suggested the presence of a hidden compartment provided reasonable suspicion of criminal activity, as long as the alterations were such that "a trooper may reasonably believe a crime is being committed."  Id. at 1504-05.  The district court credited the troopers' testimony that the alterations to the bed of Mr. Toro's truck suggested that it had a hidden compartment six to eight inches deep, and was therefore large enough to contain drugs or other contraband.  The troopers permissibly inferred, from the suggestion of the presence of a concealed compartment and from their experience with such compartments, that drugs or other contraband would be found there.  Orrego-Fernandez controls our decision, and we find that Mr. Toro's Fourth Amendment rights were not violated by the traffic stop.

## II.  Waiver of Miranda Rights

Mr. Toro next argues that the use at trial of a statement he made after he was warned of his Miranda rights violated his Fifth Amendment rights, and that the district court therefore erred in denying his motion to suppress that statement.

It is undisputed that, after the discovery of narcotics in the concealed compartment in his truck, Trooper Jirak advised Mr. Toro of his <u>Miranda</u> rights. No challenge is made to the adequacy of the warning. It is also undisputed that, after the troopers showed Mr. Toro the 200 kilograms of cocaine removed from his truck, Mr. Toro invoked his <u>Miranda</u> rights by stating that he did not wish to incriminate himself and wanted to talk to a lawyer. At issue in this appeal is a statement which Mr. Toro made after he was advised of his rights but before he invoked his right to remain silent. The substance of that statement was that Mr. Toro did not wish to cooperate out of fear that, if he did so, his family would be harmed.

If a defendant talks to police after being advised of his right to remain silent, the government bears the burden of proving by a preponderance of the evidence that the waiver of the right was voluntary. <u>Colorado v. Connelly</u>, 479 U.S. 157, 168 (1986). An express statement of waiver by the defendant is not required; instead, waiver can be inferred from the defendant's actions and words. <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979). To establish a voluntary waiver of Fifth Amendment rights, the government must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). Only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of

comprehension can a waiver be effective.  Id.; United States v. Hernandez, 93 F.3d 1493, 1501 (10th Cir. 1996).  To evaluate whether a statement or confession was coerced, we consider the characteristics of the defendant, the circumstances surrounding the statements, and the tactics employed by the police.  United States v. Guerro, 983 F.2d 1001, 1004 (10th Cir. 1993); see United States v. Short, 947 F.2d 1445, 1449 (10th Cir. 1991) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)), cert. denied, 503 U.S. 989 (1992).

In reviewing the denial of a motion to suppress statements of a defendant, we accept the factual findings of the district court unless they are clearly erroneous, Hernandez, 93 F.3d at 1501, and view the evidence in the light most favorable to the district court's ruling.  United States v. Leffall, 82 F.3d 343, 347 (10th Cir. 1996).  The ultimate determination of whether a valid waiver of Fifth Amendment rights has occurred, however, is a question of law which we review de novo.  Hernandez, 93 F.3d at 1501.  Mr. Toro appears to challenge both the district court's findings of fact as well as its legal conclusion that Mr. Toro waived his Miranda rights.

After holding a suppression hearing, the district court denied Mr. Toro's motion to suppress from the bench.  Although the court did not make detailed factual findings, it ruled that the surrounding circumstances showed that Mr. Toro heard and understood the Miranda warnings, and waived his opportunity to invoke his right to silence.  Nothing in the record suggests that the district court's findings were clearly erroneous.  Although a

- 11 -

Colombian national, Mr. Toro has lived and worked in the United States since the early 1970s. The record contains no suggestion that, during his encounter with the troopers, Mr. Toro gave any indication that he was unable to comprehend the English language or the rights of which he was advised. Indeed, the record indicates that Mr. Toro spoke to the troopers in English, and that when he did invoke his Miranda rights, the very words he used suggest his understanding of those rights.

In addition, we find no evidence which contradicts the district court's conclusion that Mr. Toro's statements were uncoerced. The record supports the district court's conclusion that Mr. Toro was properly advised of his Miranda rights, and was neither punished nor subjected to prolonged or intimidating questioning. That the troopers showed Mr. Toro the cocaine and pointed out the possible consequences if convicted in an effort to elicit cooperation does not compel a finding of coercion. When Mr. Toro invoked his rights, his request was immediately and fully honored.

Since the totality of the circumstances surrounding Mr. Toro's statements show that he freely and deliberately waived his right to remain silent—with a full understanding of the consequences—we conclude that Mr. Toro voluntarily waived his Fifth Amendment right against self-incrimination.

III.  Impeachment

Mr. Toro also challenges the prosecutor's reference at trial to his failure to tell the troopers the same information he told the jury from the witness stand. He argues that these references improperly penalized him for remaining silent and thereby violated his rights under the Fifth Amendment. Mr. Toro mischaracterizes what occurred.

It is well established that the use of a properly Mirandized defendant's post-arrest silence or partial silence for impeachment purposes violates that defendant's right against self-incrimination. Doyle v. Ohio, 426 U.S. 610, 618 (1976); United States v. Canterbury, 985 F.2d 483, 486 (10th Cir. 1993). Nevertheless, the trial testimony of a defendant may be impeached through use of his prior inconsistent statements. Id. To determine whether a constitutional violation has occurred, we view the challenged questions in the context of the entire record and, from that vantage point, consider whether those questions were designed to impeach the defendant's trial testimony, or to suggest an inference of guilt from his post-arrest silence. Id.

In the ordinary case, we determine whether there has been an impermissible comment on a defendant's right to remain silent at the time of his arrest by determining "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." United States v. May, 52 F.3d 885, 890 (10th Cir. 1995) (citations and internal quotations omitted). The contested use of the statement must be considered in the context in which the use was made. Id. This case has been complicated, however, by Mr. Toro's

failure to contemporaneously object to the prosecutor's use of his statements. This failure severely limits the scope of our review, and consequently we cannot reach the merits of Mr. Toro's argument unless the plain-error exception to the requirement of contemporaneous objection can be invoked. United States v. Gacnik, 50 F.3d 848, 851 (10th Cir. 1995); see also Fed. R. Crim. P. 52(b).

"[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" United States v. Young, 470 U.S. 1, 15 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 n.14 (1982)); United States v. Denogean, 79 F.3d 1010, 1012 (10th Cir.), cert. denied, 117 S. Ct. 139 (1996). Only a "particularly egregious" and "obvious and substantial" error, Gacnik, 50 F.3d at 852 (quotations omitted), which seriously affects the integrity of the judicial proceedings, United States v. Jones, 80 F.3d 436, 438 (10th Cir.), cert. denied, 117 S. Ct. 139 (1996), justifies invocation of the exception. Although the rigidity of the plain-error rule is relaxed somewhat when a potential constitutional error is involved, United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir. 1991) (quotation omitted), cert denied, 507 U.S. 942 (1993), the defendant bears the burden of demonstrating that he was prejudiced by the error before this court can grant him relief. United States v. Olano, 507 U.S. 725, 734 (1993).

Mr. Toro alleges that the prosecutor made improper use of his statements in both impeachment during cross-examination and closing argument. A fair reading of the

record leads us to conclude that the prosecutor's questions, while perhaps not as precisely phrased as we would prefer, were clearly intended to and did highlight the many discrepancies and inconsistencies between what Mr. Toro told the troopers at the outset of the traffic stop—prior to being placed in custody and warned of his Miranda rights—and his trial testimony. The Fifth Amendment does not prohibit the prosecutor from using the statements which Mr. Toro made to the troopers prior to being placed in custody and receiving Miranda warnings. Furthermore, consistent with the warning itself, statements Mr. Toro made to the troopers after waiving his right to remain silent may also be introduced at trial, as may those statements he made from the witness stand. Thorough review of the trial transcript reveals only two brief segments of the government's cross-examination of Mr. Toro which refer to his failure to tell the troopers the same information to which he had just testified. We have found in the government's closing argument no reference to Mr. Toro's silence during the time he was in custody and after he received Miranda warnings.

After considering the challenged use of the statements in the context of the entire record at trial, we find no occasion in this appeal to apply the plain-error exception. The central issue during Mr. Toro's trial was whether he knowingly possessed the cocaine found in the concealed compartment in his truck. Mr. Toro's defense to the prosecution's circumstantial evidence of his knowledge was denial. Given that strategy, the jury's verdict necessarily required a judgment about Mr. Toro's credibility.

- 16 -

Mr. Toro acknowledged during his testimony that he lied to the troopers, and admitted that once he had lied, he had to keep up the story. Implicit in the jury's guilty verdict is their determination that Mr. Toro's denial of knowledge of the cocaine found in his truck lacked credibility. Even if we were to hold that the prosecutor's cross-examination questions violated Mr. Toro's right against self-incrimination, which they did not, when viewed in the context of the entire record at trial, we cannot say that Mr. Toro has demonstrated that he was prejudiced by the violation. Olano, 507 U.S. at 734 (In order for the plain-error exception to be invoked, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings.").

## IV. Motion for New Trial

Finally, Mr. Toro argues that the district court erred in denying his motion for a new trial. He asserts that a new trial is warranted on two grounds: prosecutorial misconduct in closing argument and newly discovered evidence. Neither ground is persuasive.

Ordinarily, we review the trial court's decision to grant or deny a new trial for abuse of discretion, and will reverse the denial of a motion for a new trial only if the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. Week v. Schukman, 98 F.3d 542, 549 (10th Cir. 1996). Mr. Toro failed to contemporaneously object regarding the first of the two reasons he asserts as

justification for a new trial. Thus, we are again constrained in our review of this asserted error, and may only reach the issue if we find plain error. Fed. R. Crim. P. 52(b); Olano, 507 U.S. Ct. at 734; Gacnik, 50 F.3d at 851.

This first asserted error involves a portion of the prosecutor's closing argument, in which he told the jury that in order to acquit Mr. Toro, the jury had to believe that Jorge existed. The prosecutor acknowledged that there likely was a person superior to Mr. Toro in the drug transaction, but said that the Jorge described by Mr. Toro did not exist. Mr. Toro claims that this portion of the prosecutor's argument improperly shifted the burden of proof from the government to him. Moreover, Mr. Toro asserts that this error was exacerbated by the court, when it briefly remarked after giving the jury an Allen instruction that the essence of the case was the believability of the witnesses.

The short answer to Mr. Toro's argument is that the prosecutor's comments did not amount to error. As we have already discussed, the plain-error hurdle is high indeed. The court properly instructed the jury regarding the burden of proof, the credibility of witnesses, the limited significance to be attached to the closing arguments, and its need to consider the instructions as a whole. The challenged statement was but one part of the prosecution's attack on Mr. Toro's credibility—a theme which permeated the trial. Considering the entire record, we cannot say that the jury would have reached a different result in the absence of this statement. Since Mr. Toro has not shown that he was prejudiced by the prosecutor's argument or the court's remark, we find no plain error.

The second error which Mr. Toro asserts pertains to his discovery, after trial had concluded, of a wire transfer record showing that a Jorge Toro had wired him funds. A motion for a new criminal trial based on newly discovered evidence should be granted sparingly, and only in situations in which the new-found evidence is material and would probably have resulted in an acquittal. United States v. Smith, 997 F.2d 674, 682 n.6 (10th Cir.), cert. denied, 510 U.S. 937 (1993). The grant of the motion is not appropriate for evidence which, with the exercise of reasonable diligence, could have been discovered before trial, or for evidence which is simply impeaching or cumulative. Id.

Mr. Toro argues that, since the wire transfer record corroborates his testimony that Jorge had provided him funds with which to establish himself in Kansas City, the availability of the record at trial would have resulted in an acquittal. We are not swayed by his argument. Although the document would be relevant to whether a person named Jorge wired Mr. Toro funds, it does not speak to the question central to the trial: whether Mr. Toro knew that he was transporting 200 kilograms of cocaine. We therefore cannot say that the jury would have reached a different result in the absence of this statement. Consequently, we find no error in the district court's denial of Mr. Toro's motion for a new trial.

AFFIRMED.