**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 30 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 96-3221

ANTHONY E. ANDERSON,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 95-CR-40065)**

Derek M. Wright, Atlanta, Georgia, for Appellant.

James E. Flory (Jackie N. Williams, United States Attorney, and T. G. Luedke, Assistant United States Attorney, on the brief), Topeka, Kansas, for Appellee.

Before **ANDERSON**, **TACHA**, and **BRORBY**, Circuit Judges.

**ANDERSON,** Circuit Judge.

Defendant Anthony Anderson was indicted on September 20, 1995, for knowingly possessing with intent to distribute approximately six kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). His motion to suppress evidence and his motion for discovery

were denied by the district court. He then pleaded guilty to the offense, reserving the right to appeal the denial of his motion to suppress, and received a 120-month prison sentence. We affirm.

## BACKGROUND

On April 8, 1995, Mr. Anderson was driving a Chevy Suburban, with California license plates, eastbound on Interstate 70 in Saline County, Kansas. Because of construction on the Interstate, traffic going each direction was routed into a single lane. At approximately 11:20 a.m., Kansas Highway Patrol Trooper David Heim observed the Chevy Suburban traveling eastbound in the single lane of traffic. As recorded by the video-audio tape running in Trooper Heim's police car,[1] the officer believed the Suburban was being operated in violation of Kansas vehicular laws because it was following too closely the car in front of it.[2] Trooper Heim pulled the Suburban over. He told the driver, Mr. Anderson, that he had stopped him because he was "less than a second off the vehicle

---

[1]Trooper Heim's camera was mounted just right of center at the top of his windshield. Tr. of Mots. Hr'g at 50, 107, Appellant's App. Tab T.

[2]Kan. Stat. Ann. § 8-1523(a) provides as follows:

The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

Trooper Heim testified at the suppression hearing that he was particularly concerned about cars following too closely in a construction zone, because accidents are more likely to occur. Tr. of Mots. Hr'g at 16-17, Appellant's App. Tab T.

-2-

that was in front of you." Tr. of Videotape at 1, Appellant's App. Tab VT. During the course of the stop, Mr. Anderson essentially admitted that he had been following the car in front too closely.[3]

The trooper asked Mr. Anderson if the car belonged to him, to which Mr. Anderson responded that it was his uncle's car. Trooper Heim then asked Mr. Anderson to step out of the vehicle and sit in the officer's patrol car. The female passenger in the Suburban remained in the vehicle. When Mr. Anderson left the Suburban, Trooper Heim

---

[3]The transcript of the audio portion of the encounter contains the following:

DRIVER: And what they did, they kind of slowed up and he kind of caught me up a little bit, but I was only going 45.

. . . .

DRIVER: Well, I was -- you know, he -- they slowed up, I been -- you know, he kind of hit his brakes and he came off and he kind of caught me up on him, but I --.

. . . .

OFFICER [HEIM]: I just put you on a watch there, and there for a while you were a second and all the sudden I think you were less than one second.

DRIVER: Yeah, because I think he got choked up ahead.

OFFICER [HEIM]: Uh-huh.

DRIVER: And then that caused everybody to kind of back up a little bit and I caught myself being a little bit closer to him, that's why I backed off of him again, because they broke -- I had broken down back and forth.

Tr. of Videotape at 1-3, 6, Appellant's App. Tab VT.

-3-

noticed he was wearing a pager.  Mr. Anderson and the trooper sat inside the officer's patrol car.

Trooper Heim asked for and received Mr. Anderson's driver's license and vehicle registration papers.  A computer check indicated all were valid.  When asked where he was going, Mr. Anderson said that he was going to visit a nephew in Ohio.  Trooper Heim returned to the Suburban to check its vehicle identification number, and, while there, asked the female passenger, later identified as Francina Herd, where they were driving.  She stated "Oh, well, he's going to see about a job at J.B. Hunt and Company." Id. at 3.  The following interchange then occurred:

> OFFICER [HEIM]:  Oh, where's that at?
>
> PASSENGER:  I'm not sure.
>
> OFFICER [HEIM]:  You don't know where you guys are going?
>
> PASSENGER:  Well, we're going through -- I guess we're going through Alabama.
>
> OFFICER [HEIM]:  Uh-huh.
>
> PASSENGER:  And -- I'm not sure.  You'll have to ask him, all I'm doing is riding.
>
> OFFICER [HEIM]:  Oh.  Who are you to him?
>
> PASSENGER:  I'm his girlfriend.

Id. at 4.  While talking to Ms. Herd, Trooper Heim noticed a cellular phone, a radar detector and a CB radio in the Suburban and detected the scent of air fresheners.

Trooper Heim then returned to his patrol car and began writing a warning citation. He told Mr. Anderson that he could return to his car, and Mr. Anderson replied, "Oh, that's okay. I'll just -- you know, because I'm applying for (inaudible). I'm applying with J. B. Hunt." Id. Mr. Anderson remained in the patrol car. Trooper Heim asked for another officer to come to his location as back-up, telling the dispatcher that "[t]he traffic is kind of heavy behind me, kind of keep them off of me." Id. at 5. The trooper and Mr. Anderson then discussed the traffic violation, and the officer asked Mr. Anderson how long they were going to be on their trip, to which Mr. Anderson responded they would probably be gone "to next weekend . . . . probably about six more days." Id. at 6.

When he finished writing the citation, Trooper Heim returned Mr. Anderson's driver's license and registration papers. He told Mr. Anderson the citation was "just a written warning." Id. at 7. The officer then asked Mr. Anderson if he was carrying any narcotics. Mr. Anderson responded that he was not. The officer asked if he could search the Suburban, stating "[w]e got a lot of drugs coming out of California." Id. Mr. Anderson answered, "Yeah, well, we're not drugs (sic). I'm a commercial truck driver and I'm trying to apply with J.B. Hunt in Arkansas, so[4] -- and she's 45 years old. And you can -- if you want to scout around, fine." Id. Both the officer and Mr. Anderson got out of the patrol car.

---

[4]At this point in the conversation, Officer Heim actually interrupted Mr. Anderson with another request to search: "Okay. Well, can I take a look in your vehicle?" Tr. of Videotape at 7, Appellant's App. Tab VT.

During his search of the car, Trooper Heim noticed missing screws in the back of the Suburban, and the floor "built up." Id. at 8. When he had difficulty opening the tailgate, Mr. Anderson assisted him in trying, unsuccessfully, to open the tailgate. When the trooper looked underneath the vehicle, he noticed fresh paint, new hoses and clamps, and fresh tool marks on and around the gas tank. Mr. Anderson then said, "[W]hat's the -- seems to be the problem here? I know what you asked me, but, I mean, you're going on and on. You gave me a warning and that's about it, so --" Id. at 10. When Trooper Heim told Mr. Anderson that there were "bolts and stuff" missing from the car and "fresh tool marks on the gas tank," Mr. Anderson responded, "Oh, that's old. This is an '89 truck. That's all --" and then said, "if you want to look at the carpet, or whatever, help yourself." Id.

After Trooper Heim communicated with the dispatcher, Mr. Anderson asked, "You want me -- do you want me to open up the back gate?" Id. at 11. When Trooper Heim indicated he would like it opened, saying "[i]f you can get it open, that would be great," id. , Mr. Anderson again assisted the trooper in attempting to open it up.

Trooper Heim then procured a flexible scope from his patrol car and looked inside the gas tank. While apparently looking underneath the car again, with the aid of the flexible scope, "look[ing] through the fender well in the back right tire between the frame rail and the body itself," Tr. of Mots. Hr'g at 40, Appellant's App. Tab T, the trooper observed a trap door in the top of the gas tank. He told Mr. Anderson that he (the officer)

would need to remove the gas tank so he could see what was inside it.  Mr. Anderson protested, saying "Okay, I gave you permission to search the car, that you did . . . .  Now you're going all into another area . . . .  Now you guys going to tear -- you're going to dismantle the whole car."  Tr. of Videotape at 14-15, Appellant's App. Tab VT.

Trooper Heim then arrested Mr. Anderson for possession of drug paraphernalia. The Suburban was towed to the highway patrol office and impounded.  A search of the gas tank revealed six kilograms of cocaine in a hidden compartment.

The district court denied Mr. Anderson's motion to suppress the cocaine, holding (1) the initial stop of Mr. Anderson's vehicle was valid based upon the trooper's observation of a traffic violation; (2) at the time Trooper Heim asked Mr. Anderson if he were carrying narcotics, the encounter was consensual, and, therefore, Mr. Anderson was not unlawfully detained, or, alternatively, Trooper Heim had a reasonable, articulable suspicion justifying the brief detention to ask about narcotics; (3) Mr. Anderson's consent to search the vehicle was voluntary and, by the time Mr. Anderson attempted to withdraw his consent, the trooper had developed probable cause to search the vehicle's gas tank and arrest Mr. Anderson; and (4) Mr. Anderson's discovery requests for information relating to the normal practices of Trooper Heim and his superiors were properly denied as moot. United States v. Anderson, 915 F. Supp. 1146 (D. Kan. 1996).

Mr. Anderson argues:  (1) the district court clearly erred in holding that Trooper Heim observed Mr. Anderson commit a traffic violation; (2) even assuming the traffic

stop was valid, the detention exceeded the scope of the stop; (3) the district court erred in concluding that the encounter became consensual, or, alternatively, that Trooper Heim had a reasonable articulable suspicion justifying the brief detention; (4) the court erred in concluding that Mr. Anderson's consent was voluntary or, if voluntary, the court erred in concluding that the actual search did not exceed the scope of the consent given; (5) the warrantless search of the vehicle's gas tank, after impoundment, was unconstitutional; and (6) the denial of Mr. Anderson's request to discover the practices of Trooper Heim and his superior officers was a denial of Mr. Anderson's equal protection rights.

## DISCUSSION

When reviewing the denial of a motion to suppress evidence, we view the evidence in the light most favorable to the government and the district court's findings, and we review the district court's factual findings only for clear error. United States v. Elliott, 107 F.3d 810, 813 (10th Cir. 1997); see also United States v. Botero-Ospina, 71 F.3d 783, 785 (10th Cir. 1995) (en banc), cert. denied, 116 S. Ct. 2529 (1996). We review de novo the ultimate determination of reasonableness under the Fourth Amendment. United States v. Toro-Pelaez, 107 F.3d 819, 824 (10th Cir. 1997). Furthermore, "'the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge.'" Id. (quoting United States v. Foster, 100 F.3d 846, 849 (10th Cir. 1996)).

## I. **Initial Stop and Detention**

A routine traffic stop is a seizure under the Fourth Amendment. Botero-Ospina, 71 F.3d at 786. Because a traffic stop is constitutionally analyzed as an investigative detention, requiring reasonable suspicion of criminal activity, as opposed to a full custodial arrest requiring probable cause, the principles of Terry v. Ohio, 392 U. S. 1, 19-20 (1968) apply. Thus, the stop must be justified at its inception and the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 20; see also Toro-Pelaez, 107 F.3d at 824. We have held that a traffic stop is justified at its inception, and therefore valid under the Fourth Amendment, "if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Botero-Ospina, 71 F.3d at 787. See also Whren v. United States, 116 S. Ct. 1769, 1777 (1996). In this case, while Mr. Anderson now disputes whether in fact Trooper Heim saw or could see him commit the traffic violation of driving too closely to the car in front of him, the record reveals, as the government argues, that he essentially admitted to Trooper Heim that he was following too closely. See, supra, n.3. We therefore conclude that the initial stop was valid.

We now turn to whether the investigative detention exceeded permissible Fourth Amendment bounds. An officer conducting a routine traffic stop may perform a computer check on the driver's license and the vehicle registration papers. United States

v. McCrae, 81 F.3d 1528, 1535-36 n.6 (10th Cir. 1996); see also United States v. Shareef, 100 F.3d 1491, 1501 (10th Cir. 1996).  Once the officer has conducted such a check, and "'the driver has produced a valid license and proof that he is entitled to operate the car, [the driver] must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'"  United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir. 1994) (quoting United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988), rev'd on other grounds, Botero-Ospina 71 F.3d at 787.  The officer may only detain the driver and conduct further questioning if, during the traffic stop, "the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity."  United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994); see also Elliott, 107 F.3d at 813.  Additionally, if the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning, no further Fourth Amendment seizure or detention occurs. Sandoval, 29 F.3d at 540.

The district court held that "at the time Trooper Heim asked Anderson if he were transporting narcotics, Anderson's encounter was a consensual one."  Anderson, 915 F. Supp. at 1154.  We agree.  We have held that "after an officer issues the citation and returns any materials provided, the driver is illegally detained only if the driver has objectively reasonable cause to believe that he or she is not free to leave."  Shareef, 100 F.3d at 1501.  While we have held that return of the driver's documentation is required

before a detention can end, we have also observed that return of such documentation does not always indicate that an encounter has become consensual. Elliott, 107 F.3d at 814. A "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled" may suggest that a detention has not ended. United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991).

In this case, the district court found that "Trooper Heim handed Anderson a warning citation and returned Anderson his papers," Anderson, 915 F. Supp. at 1154, before he asked any questions about narcotics. Prior to returning Mr. Anderson's papers to him, the trooper had told Mr. Anderson that he could go back to his vehicle, and Mr. Anderson chose to remain in the patrol car. There were none of the indicia of coerciveness discussed in Turner, 928 F.2d at 959. See Elliott, 107 F.3d at 814. While Trooper Heim did not specifically tell Mr. Anderson that he was free to leave, that is not required for an encounter to be consensual. See Ohio v. Robinette, 117 S. Ct. 417, 421 (1996) (rejecting per-se rule that detention pursuant to a traffic stop cannot become consensual until officer has told detainee that he is free to leave); see also Elliot, 107 F.3d at 814 (noting that encounter was consensual even though officer did not tell driver she was free to go). Mr. Anderson accordingly was not being illegally detained when Trooper Heim asked if he was carrying narcotics and asked to search his vehicle. We

-11-

now consider whether his consent to search was voluntary, and whether the scope of the search exceeded the consent given.

## II. **Consent to Search**

Mr. Anderson argues his consent was involuntary because it was obtained while he was not free to leave; Trooper Heim had already called for back-up because he had already decided to search the vehicle, and that, even if voluntary, the actual search exceeded the scope of the consent given. We have already held that the encounter between Mr. Anderson and Trooper Heim was consensual when the consent to search was given, so Mr. Anderson was, in fact, free to leave. The fact that Trooper Heim may have already called for back-up because he intended to search the vehicle is irrelevant, unless he communicated that intent to Mr. Anderson in some way that made Mr. Anderson feel compelled to consent. The district court's finding that "Trooper Heim's simple request to search the vehicle was not accompanied by any threats or show of authority," Anderson, 915 F. Supp. at 1154, is not clearly erroneous. Trooper Heim's subjective motivations are immaterial. See Robinette, 117 S. Ct. at 420-21; Whren, 116 S. Ct. at 1774.

Mr. Anderson also argues that his consent to let Trooper Heim "scout around" limited the scope of the search to something less than the trooper in fact conducted. "The scope of a search 'is generally defined by its expressed object,' and 'is limited by the breadth of the consent given.'" Elliott, 107 F.3d at 814-15 (citations omitted). We apply

-12-

an objective reasonableness test to measure the scope of a person's consent: "What would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). Thus, the question is whether a typical reasonable person would have thought that Mr. Anderson's permission to "scout around" permitted Trooper Heim to search the car as he did, including looking underneath and around the car until he saw a trap door or unusual compartment in the gas tank.

We hold that giving the officer consent to "scout around" authorized the search conducted in this case. We have held that similar language permitted a full search of an automobile. See Elliott, 107 F.3d at 815 (collecting cases). Moreover, during the search, after the trooper noticed fresh paint, new hoses and clamps and fresh tool marks around the gas tank, Mr. Anderson tried to explain those items by the age of the car, but then said, "if you want to look at the carpet or whatever, help yourself." Tr. of Videotape at 10, Appellant's App. Tab VT. Thus, Mr. Anderson broadened the scope of the search consented to by inviting the trooper to look at the carpet "or whatever." Such consent would be understood by the typical reasonable person to permit the kind of further examination, looking through the fender well at the gas tank, which led Trooper Heim to discover the hidden compartment in the gas tank. Additionally, Mr. Anderson stood by and watched as the trooper conducted his search, and raised no objection as the trooper focused on the gas tank. See United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.

-13-

1986).  We therefore affirm the district court's conclusion that the scope of the search did not exceed the scope of the consent given.

### III.  Search of Gas Tank

Mr. Anderson also argues that, once the car was impounded and had been towed to highway patrol headquarters, the officers should have obtained a warrant to search the gas tank where the cocaine was discovered.  Trooper Heim described the search at the suppression hearing as "a combination of impound, inventory, and also of probable cause."  Tr. of Mots. Hr'g at 103, Appellant's App. Tab T.   The district court held that the warrantless search of the gas tank did not violate the Fourth Amendment.  Anderson, 915 F. Supp. at 1155.

The Supreme Court has held that "police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."  Florida v. Meyers, 466 U.S. 380, 381 (1984) (per curiam); Chambers v. Maroney, 399 U.S. 42, 48 (1970); United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993).  Mr. Anderson argues that, because the vehicle was taken to the highway patrol headquarters and searched there, rather than at the roadside where it was initially stopped, Trooper Heim should have obtained a warrant.  We disagree.

Although the automobile exception to the Fourth Amendment's warrant requirement is based in part on the ready mobility of automobiles, "the justification to

-14-

conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." Michigan v. Thomas, 458 U.S. 259, 261 (1982) (per curiam); see also Ludwig, 10 F.3d at 1528. Thus, the Supreme Court has upheld searches conducted after a car was impounded, Meyers, 466 U.S. at 382, or was taken to the police station. Texas v. White, 423 U.S. 67, 68 (1975); see also Chambers, 399 U.S. at 52 n.10 (observing that it "was not unreasonable . . . to take the car to the station house"); United States v. Gastiaburo, 16 F.3d 582, 586 (4th Cir. 1994) ("[T]he justification to conduct a warrantless search under the automobile exception does not disappear merely because the car has been immobilized and impounded."); United States v. Lopez, 777 F.2d 543, 550 (10th Cir. 1985) ("Under the 'automobile exception' then, the police conduct in moving Lopez from Interstate 40 to the Santa Rosa State Police office is proper if it was supported by probable cause."). The crucial question is whether the police have probable cause: "[I]f police have probable cause to search a car, they need not get a search warrant first even if they have time and opportunity." Ludwig, 10 F.3d at 1528.

We agree with the district court that Trooper Heim had probable cause to search the car's gas tank when he discovered evidence of a hidden compartment. At that point, he had the following information: Mr. Anderson and his passenger gave slightly

-15-

conflicting versions of their travel itinerary; the passenger seemed particularly vague about their travel destination; he had detected the scent of air freshener in the car; Mr. Anderson carried a pager, which Trooper Heim testified is commonly carried by drug-traffickers; he had observed, in his consensual search of the car, evidence that the gas tank had been tampered with, and then had discovered what appeared to be a hidden compartment in the gas tank. We affirm the district court's conclusion that those factors together furnished probable cause to search the gas tank.[5] Evidence of a hidden compartment can contribute to a finding of probable cause to search. See United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1994) (holding that evidence of hidden compartment contributed to probable cause to search); United States v. Nicholson, 17 F.3d 1294, 1298 (10th Cir. 1994) (same); United States v. Martel-Martines, 988 F.2d 855, 858-59 (8th Cir. 1993) (same); United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990) (holding that evidence of hidden compartment, along with inadequate amount of luggage for claimed duration of trip, furnished probable cause); United States v. Price, 869 F.2d 801, 804 (5th Cir. 1989) ("Once the agents had discovered the secret compartment they had probable cause to search the compartment itself."); see also Toro-Pelaez, 107 F.3d at 825 ("Recent Fourth Amendment cases in this circuit and others have determined that evidence of a concealed compartment can give rise to reasonable

---

[5]Trooper Heim had therefore developed probable cause to search the gas tank before Mr. Anderson attempted to withdraw his consent.

-16-

suspicion of criminal activity."). That evidence, combined with the other suspicious circumstances, furnished probable cause to search the gas tank. Cf. United States v. Leos-Quijada, 107 F.3d 786, 795 (10th Cir. 1997) (noting that among the factors contributing to suspicion of vehicle was the "presence of a strong air freshener scent and the bottle of air freshener"); United States v. Alvarez, 68 F.3d 1242, 1246 (10th Cir. 1995) (McKay, J., concurring) (noting that we have "repeatedly held that air freshener coupled with other indicia of criminal activity supports a reasonable brief inquiry"), cert. denied, 116 S. Ct. 1436 (1996); United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir.), cert. denied, 115 S. Ct. 1721 (1995) (holding that inconsistent stories from driver and passenger supported continued detention); United States v. Bloomfield, 40 F.3d 910, 918-19 (8th Cir. 1994) (en banc) (holding that strong "masking odor" and pager contributed to reasonable suspicion); United States v. Barth, 990 F.2d 422, 425 (8th Cir. 1993) (observing that a pager is a "tool of the drug trade").

## IV. Discovery Requests

Finally, Mr. Anderson argues that the district court erred in refusing his request to "discover[] evidence that would have proven that the arresting officer's pretextual stop of [Mr. Anderson] was racially motivated." Appellant's Br. at 34. He argues that the refusal violates his rights under the equal protection clause. The district court denied his discovery motions as moot, in light of Botero-Ospina's rejection of the doctrine of

pretextual stops, and in light of its finding that the stop in this case was lawful under Botero-Ospina.[6] While it is unclear what remedy Mr. Anderson seeks, or whether he raised this argument in equal protection terms in the court below,[7] we agree with the district court that it is now moot. We have held that the traffic stop in this case was justified by Trooper Heim's observation of an admitted traffic violation. Thus, Mr. Anderson can make no argument that the stop was in fact racially motivated.

For the foregoing reasons, the denial of Mr. Anderson's motion to suppress is AFFIRMED.

---

[6]The district court also observed that Mr. Anderson failed to comply "with the procedural guidelines of this court regarding discovery under Fed. R. Crim. P. 16 and Brady." Anderson, 915 F. Supp. at 1155.

[7]The government argues Mr. Anderson failed to raise it as an equal protection argument at his suppression hearing, but argued it solely under the Fourth Amendment. We agree that the focus of his argument about race, and Trooper Heim's patterns and practices of stopping vehicles, were couched only in Fourth Amendment terms at the suppression hearing. Botero-Ospina renders that argument moot in this case. Mr. Anderson claims that he raised it as an equal protection argument at his sentencing hearing, a transcript of which is not in the record.