F I L E D
United States Court of Appeals
Tenth Circuit

JUN 30 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JESUS SALAIS-PEREA,

    Defendant-Appellant.

No. 98-2096

(D.C. No. CR-97-563-SC)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **BARRETT**, and **BRORBY**, Circuit Judges.

Defendant Jesus Salais-Perea appeals the district court's order denying his motion to suppress evidence discovered by United States Border Patrol Agents during a warrantless search of his vehicle. On appeal, Defendant argues the district court erroneously concluded that: (1) agents had probable cause to search his vehicle; and (2) the search did not exceed the scope of his consent. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.

The United States Border Patrol operates a vehicle checkpoint on New Mexico State Highway 54 near Alamogordo, New Mexico. On August 30, 1997, Defendant entered the checkpoint driving a 1992 Ford pickup truck. Border Patrol Agent Larry Iloff asked Defendant routine questions regarding citizenship status, point of origin, final destination, ownership and registration of the vehicle and other background information. At Agent Iloff's request, Defendant provided an I-190 border crossing card. Agent Iloff noticed that when Defendant handed him the card, his hands were visibly shaking and he failed to make eye contact. Agent Iloff testified that less than one percent of the people passing through the checkpoint exhibit nervousness to the degree exhibited by Defendant.

During their communication, Agent Iloff noticed a freshly painted propane tank in the back of Defendant's pickup. He also noticed a new hose attached to the tank. Agent Iloff asked Defendant how long the tank had been in the pickup. Defendant responded seven months. Finding the fresh paint, new hose and clean appearance inconsistent with Defendant's response, Agent Iloff referred Defendant to the secondary inspection area.

At the secondary inspection area, Agent Iloff asked for and received consent to search Defendant's vehicle. Agent Iloff examined the propane tank. During his inspection, he was able to chip a piece of paint off with his fingernail. Agent Iloff then tapped the propane tank with a tool. In his experience, propane tanks filled only with propane have a distinct metallic "ping," while propane tanks containing foreign objects

2

have noticeable dead spots. Agent Iloff's "test" revealed several dead spots in the tank.

Agent Iloff next noticed that new screws held the fuel gauge in place. The screws were loose and he could turn them with his fingers. In addition, Agent Iloff observed that new bolts with fresh scratches secured the tank to the vehicle. He also noticed that the bolts and hose were not covered with road film or grime. Thus, although Defendant asserted that the tank had been installed seven months prior, these facts suggested that the tank had recently been removed from the truck.

Agent Iloff notified the shift supervisor of the situation. Recognizing the dangers involved with searching a propane tank, the supervisor instructed Agent Iloff to bring the vehicle to the border patrol station in Alamogordo. Agent Iloff asked Defendant to accompany him to the station where, he explained, agents would further inspect the vehicle. Defendant agreed. Agents subsequently searched the tank and found 176 pounds of marijuana inside.

Authorities charged Defendant with possession with intent to distribute more than one hundred kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Defendant moved to suppress the marijuana discovered in his vehicle. The district court denied the motion to suppress holding that the agents had probable cause to search the tank and, in the alternative, Defendant consented to the search.

II.

3

On appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and view the evidence in a light most favorable to the government. United States v. Downs, 151 F.3d 1301, 1302 (10th Cir. 1998). We review de novo the ultimate reasonableness of the seizure under the Fourth Amendment. United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997). The credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are the province of the district court. Id.

Police officers who have probable cause to believe a vehicle contains contraband may search it without first obtaining a warrant. The search may take place by the side of the road, Chambers v. Maroney, 399 U.S. 42, 48 (1970), after the vehicle has been impounded, Florida v. Meyers, 466 U.S. 380, 382 (1984), or after an officer directs the driver to follow him to the station. United States v. Lopez, 777 F.2d 543, 550 (10th Cir. 1985). "If police have probable cause to search a car, they need not get a search warrant first even if they have time and opportunity." United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993).

An officer has probable cause to search where, under the totality of the circumstances, a fair probability exists that contraband will be found in a particular place. Downs, 151 F.3d at 1303. Acts which viewed in isolation appear facially innocent may, when taken together, create bona fide suspicions giving rise to probable cause. Illinois v. Gates, 462 U.S. 213, 243-44 fn. 13 (1982). Thus, "[w]e do not consider the [facts] in

isolation, but rather in their interrelated context, where each may reinforce the other, so that the laminated total may indeed be greater than the sum of its parts." United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir. 1990).

Examining the facts in a light most favorable to the government, we conclude the agents had probable cause to search Defendant's vehicle. Defendant was traveling along a known drug-smuggling route. When Defendant pulled into the checkpoint and Agent Iloff asked for his documentation, Defendant would not make eye contact and was visibly nervous. In fact, Agent Iloff testified that less than one percent of the people proceeding through the checkpoint exhibit extreme nervousness like that shown by Defendant.[1] Agent Iloff then noticed that Defendant's propane tank was freshly painted and had a new hose. When asked, Defendant responded that the tank was installed seven months earlier. Agent Iloff's experience told him that Defendant's story was inconsistent with the new hose and fresh paint. Accordingly, he referred Defendant to the secondary inspection area and asked if he could search the vehicle. Defendant agreed.[2]

During the search, Agent Iloff was able to easily chip a piece of paint off of the

---

[1] We are cognizant that a defendant's nervousness does not, standing alone, support a finding of probable cause. However, extreme nervousness in tandem with other supporting facts may give rise to a finding of probable cause. See United States v. Soto-Cervantes, 138 F.3d 1479, 1484 (10th Cir. 1998).

[2] Defendant does not dispute that he consented to the agent's search of the vehicle at the secondary inspection area. Instead, he challenges the government's assertion that he consented to the search of the propane tank at the Border Patrol station. Because we conclude the agents had probable cause to search the tank, we need not determine whether he consented to the search at the Border Patrol station.

propane tank. He examined the gauge and noticed that it was attached with new screws which he could turn with his fingers. He then noticed that the bolts fastening the tank were clean and freshly scratched, which was also inconsistent with the tank being installed in the truck seven months earlier. Finally, he tapped the tank in several places with a tool. In his experience, a tank containing only propane emits a distinct metallic "ping" when tapped, where a tank with a foreign object inside would not. Defendant's tank contained several dead spots which did not emit a "ping" when tapped.

Viewed in the aggregate, these facts are sufficient to cause a reasonable officer to believe the tank contained contraband. See Muniz-Melchor, 894 F.2d at 1438-39. Thus, the agents had probable cause to drain and search the propane tank. Because the agents had probable cause to search, we need not determine whether they did so with consent. United States v. Parker, 72 F.3d 1444, 1451 (10th Cir. 1995).

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

6