F I L E D
**United States Court of Appeals
Tenth Circuit**

**NOV 5 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EDWARD JOSEPH STRABALA,

    Defendant - Appellant.

No. 02-1066
D.C. No. 01-CR-24-D
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **LUCERO**, and **HARTZ**, Circuit Judges.

Edward Joseph Strabala, a federal prisoner, appeals his conviction for

possession of methamphetamine with intent to distribute, arguing that the district

court should have suppressed certain evidence on Fourth Amendment grounds.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On the morning of November 7, 2000, officers of the Colorado Springs Police Department were patrolling Interstate 25 in response to speeding problems near the Tejon Street exit. Using a radar gun, Officer Otto Knolhoff clocked a red Camaro traveling at sixty-five miles per hour and notified Officer David Nelson, who drove his police vehicle in pursuit. After the Camaro changed lanes, Nelson observed a Chevy pickup truck speed up behind the Camaro. This truck, which belonged to Strabala, appeared to Nelson to be following the Camaro "within a couple feet . . . right on the Camaro's bumper." (Appellee's App. at 28.) Nelson decided that the truck was following the Camaro too closely, a violation of state and city law, and called for "cover." (Id. at 31.) Nelson then stopped the truck, abandoning his pursuit of the Camaro.

As Nelson approached the truck, Strabala rolled down the window. Nelson noticed that Strabala's pupils were dilated, and smelled an odor coming from the window that, based on his training and past experience in narcotics investigation, he identified as methamphetamine. According to Nelson, he asked Strabala for his license, insurance, and registration, and Strabala replied that he "did not have it." (Id. at 35.) Nelson then asked for permission to search the vehicle, and Strabala responded with "no problem" or "go right ahead." (Id.)

While Nelson asked for permission to search the vehicle, Officer Duaine

Peters arrived in response to Nelson's call for cover. Peters asked Strabala a second time for his license, registration, and proof of insurance. Strabala gave Peters an identification card and told him his license was suspended for being a habitual traffic offender. Peters considered Strabala under arrest at that point. Before placing him in the police car, Peters conducted a pat-down search of Strabala "to make sure he didn't have anything on him, any weapons or anything." (Id. at 95.) Noticing some "large, hard objects" in Strabala's left jacket pocket, Peters reached into the pocket to identify them, and "could tell that it felt like large, individually wrapped packages of what [he] recognize[d] to be drugs." (Id.)

Peters notified Nelson that Strabala was a habitual traffic offender and had narcotics in his pocket. By this time, Nelson had noticed a coffee can with a false bottom in Strabala's truck. Although there were no drugs in the can, Nelson later testified that such cans are often used for storage of drugs. Believing Strabala to be in custody for driving under the influence of drugs as well as driving without a license while a habitual traffic offender, Nelson removed the drugs from Strabala's pocket, and also found $988 in currency. Either before or shortly after the drugs were removed, Strabala was handcuffed. Officer Knollhoff, who had also arrived at the scene, processed this evidence. At the police station, Strabala was advised of his Miranda rights and proceeded to make incriminating

statements to the police.

Strabala was charged with one count of unlawful possession of fifty grams or more of a mixture or substance containing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). At trial, Strabala moved to suppress the coffee can found in his vehicle, the methamphetamine and currency found on his person, and certain statements made to the police. After holding an evidentiary hearing, the district court denied Strabala's motion to suppress. Strabala entered a conditional plea agreeement under Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress. Strabala was sentenced to 110 months' imprisonment and five years' supervised release. On appeal to this court, Strabala argues that the traffic stop leading to his arrest was unjustified and that the pat-down search of his person was unlawful.[1]

## II

"When reviewing an order granting or denying a motion to suppress, we accept the district court's factual findings unless they are clearly erroneous, and

---

[1] Strabala does not argue on appeal that the statements he made to the police officers should have been suppressed, except insofar as these statements stemmed from the allegedly unjustified traffic stop and were thus "fruit of the poisonous tree." (Appellant's Br. at 8.) As discussed below, we reject Strabala's argument that the traffic stop was unjustified. Because he makes no other argument on appeal with respect to his statements to the police, we do not reach the issue of whether such statements should have been suppressed.

we view the evidence in the light most favorable to the district court's determination." United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001). "We are mindful that at a hearing on a motion to suppress, the credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." United States v. Fernandez, 18 F.3d 874, 876 (10th Cir. 1994). Nevertheless, the ultimate determination of reasonableness under the Fourth Amendment is a question of law that we review de novo. Caro, 248 F.3d at 1243.

Strabala's first argument is that the initial traffic stop leading to his arrest was unjustified. We disagree. At the suppression hearing, the district court found that Strabala was traveling "within 2 to 3 feet of the Camaro," and was pulled over because he was "following too closely." (Appellee's App. at 170–71.) This factual finding is not clearly erroneous, and we must accept it. Caro, 248 F.3d at 1243. We have held that a traffic stop is justified at the inception, and therefore valid under the Fourth Amendment, when it is based on a traffic violation of following too closely. United States v. Anderson, 114 F.3d 1059, 1063–64 (10th Cir. 1997). Although Strabala did introduce expert testimony suggesting that Officer Nelson could not have observed Strabala's pickup following the Camaro within a few feet as he described, the district court

had the discretion to disregard this testimony. There is no basis for overturning the district court's ruling with respect to the validity of the traffic stop.

Next, Strabala characterizes the search of his person as a <u>Terry</u> pat-down search, and argues that it was not justified by a suspicion that Strabala was "armed and presently dangerous" as required by <u>Terry v. Ohio</u>, 392 U.S. 1, 24 (1968). In its ruling on the motion to suppress, however, the district court analyzed the search of Strabala's person not as a <u>Terry</u> pat-down, but as a search incident to a lawful arrest. "A warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search." <u>United States v. Anchondo</u>, 156 F.3d 1043, 1045 (10th Cir. 1998).

When a search is conducted incident to a lawful arrest, there is no requirement that the officers suspect the defendant to be armed and dangerous. Nor is it necessary that the search take place after the arrest. Provided that the arrest "followed quickly on the heels of the challenged search of petitioner's person," it is not "particularly important that the search preceded the arrest or vice versa." <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 111 (1980).

Analyzing the pat-down of Strabala's person, the district court noted that "when Defendant was patted down, it was with the intention of effectuating an arrest based upon the fact that he was an admitted habitual traffic offender

driving without a valid license." (Appellee's App. at 209.) Accordingly, the district court found that "the arrest" was "based on a legitimate traffic violation." (Id.) We must accept this factual finding of the district court. Testimony at trial, moreover, established that Strabala "was taken into custody" in part because he was "a habitual traffic offender" driving without a license. (Id. at 47.)

Viewing this evidence in the light most favorable to the district court's ruling, Caro, 248 F.3d at 1243, we conclude that the pat-down search of Strabala's person was incident to his arrest for driving without a license as a habitual traffic offender. That Strabala was not indicted for this offense is not relevant to our Fourth Amendment analysis, for it is the cause for arrest and not the charges eventually brought against the defendant that matters. The district court correctly denied Strabala's motion to suppress the evidence obtained from the pat-down search of his person.

### III

Strabala's conviction is **AFFIRMED**.

The mandate shall issue forthwith.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge