**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 27 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KNOWLINGTON OTTOWAY
BURBAGE,

Defendant - Appellant.

No. 03-2184

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-02-1813-JC)**

---

Submitted on the briefs [*]:

Michael G. Katz, Federal Public Defender, Raymond P. Moore, Federal Public
Defender, and Vicki Mandell-King, Assistant Federal Public Defender, Denver,
Colorado, for Defendant - Appellant.

David C. Iglesias, United States Attorney, and David N. Williams, Assistant
United States Attorney, Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **KELLY** , **BRORBY** , and **HARTZ** , Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

**HARTZ** , Circuit Judge.

Defendant Knowlington Ottoway Burbage appeals his conviction for possessing more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). He contends that (1) the district court improperly denied his motion to suppress the cocaine, which was found during the search of a backpack he denied owning; and (2) he should be resentenced because the district court made improper comments to the jury after it returned its verdict. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the decision of the district court.

## I.    BACKGROUND

The challenged search occurred on September 20, 2002. Agents of the Drug Enforcement Administration (DEA) assigned to the Albuquerque Amtrak depot reviewed a list of the names of everyone traveling on a train from Los Angeles to Chicago. Defendant attracted their attention because he had paid cash for a one-way ticket from Los Angeles to Philadelphia.

The agents, dressed in casual clothing, boarded the train when it arrived in Albuquerque. Agent Jarrell Wayne Perry spoke with Defendant. He identified himself as a DEA agent, asked Defendant about his travel, and examined (and returned) Defendant's ticket. Perry also asked him whether he was traveling with

any luggage.  Defendant replied that he was not.  Defendant then left the train to take pictures.  When Defendant reboarded the train, Perry returned to Defendant's seat and saw a grey and black backpack in the overhead luggage compartment. He had not noticed the backpack during his initial encounter with Defendant.

Perry asked Defendant whether the backpack belonged to him.  Defendant replied that it belonged to the passenger who had been sitting beside him.  Perry attempted to find that person, but the other passengers in the car informed him that no passenger had been seated by Defendant.  He then asked the other passengers in the car whether the backpack belonged to any of them; no one claimed it.  Perry again asked Defendant whether the backpack belonged to him. After Defendant replied that it did not, he added that the owner of the backpack had given him permission to put his green portfolio inside it.

Without asking Defendant for permission to search the backpack, Perry either opened the backpack himself or looked inside it after Defendant opened it. Perry testified at the preliminary hearing and the suppression hearing that Defendant unzipped the bag and told him that he could search the portfolio.  But Defendant testified at the suppression hearing that Perry opened the bag, and that he did not give Perry consent to search the portfolio.  Other evidence supported Defendant's assertion that Perry opened the backpack.  Agent Hyland, who performed a field test on the contents of the backpack, wrote a report stating that

Perry had opened the backpack; and Agent Mickey Teague testified at the suppression hearing that Perry had informed him that he had opened the backpack.

After the backpack was opened, Defendant or Perry removed the portfolio. Perry then noticed a brick-like object wrapped in duct tape inside the backpack. The brick-like package contained cocaine, and Defendant was arrested.

Defendant moved to suppress the cocaine. At the suppression hearing he admitted that the backpack belonged to him and that he had told Perry that it did not belong to him because he knew it contained cocaine.

The district court concluded that the backpack was abandoned after Perry asked Defendant and the other passengers whether it belonged to anyone and no one claimed it. The court found Defendant had removed his portfolio from the backpack, ruled "everything to be consensual," and denied Defendant's motion to suppress the cocaine. R. vol. 4 at 71.

Defendant went to trial and was convicted by a jury. After the verdict the trial judge discussed the case with the jurors. The judge informed the jury that Defendant had essentially confessed to the crime at the suppression hearing, and that he had a prior criminal record as well as a drug charge pending in another state. The judge also mentioned that he had been informed by defense counsel that Defendant had wanted counsel to ask unethical questions at trial. Addressing

sentencing, the judge stated that Defendant was facing a minimum ten-year sentence, and noted that the amount of cocaine Defendant possessed would affect his sentence. In addition, the judge remarked that the government had made several plea offers to Defendant, but Defendant "was just too smart for everybody and turned them all down," and would therefore "lose[] all of the points he might have gotten." R. vol. 5 at 215. Specifically, the judge stated that if Defendant had entered into a plea agreement, he "would have given him three points for acceptance of responsibility and maybe something else." *Id.* The judge also observed that during plea bargaining "[t]he government wanted to give [Defendant a] minor participant [adjustment], and that would have really reduced his sentence." *Id.*

At the sentencing hearing the district court denied all Defendant's objections to the presentence report and all his motions related to sentencing. Of particular relevance to this appeal, the court declined to apply an acceptance-of-responsibility adjustment. Nonetheless, the district court sentenced Defendant to the low end of the applicable guideline range under the Sentencing Guidelines (the guideline range was 130-162 months, and Defendant was sentenced to 130 months).

Defendant now appeals, asserting that the district court improperly denied the motion to suppress because it (1) failed to make specific findings, (2) erred in

determining that the backpack was abandoned, (3) erred in finding that Defendant opened the backpack and removed the portfolio, and (4) erred in determining that Defendant voluntarily consented to the actions leading to the discovery of the cocaine. Defendant also argues that the district court spoke improperly to the jury about the case, and that the court's comments mandate resentencing.

## II.   MOTION TO SUPPRESS

In reviewing a decision on a motion to suppress, "[w]e view the evidence in the light most favorable to the district court's findings," accepting those findings unless clearly erroneous. *United States v. Toro-Pelaez*, 107 F.3d 819, 824 (10th Cir. 1997). "[T]he credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the trial judge." *United States v. Fernandez*, 18 F.3d 874, 876 (10th Cir. 1994). "The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which we review de novo." *Toro-Pelaez*, 107 F.3d at 824.

### A.   The District Court's Findings

Defendant contends that the district court's findings were inadequate. In particular, he asserts that the district court did not resolve "hotly contested questions about the opening and search of the backpack." Aplt. Br. at 19. We disagree.

"When factual issues are involved in deciding a motion, the court must state its essential findings on the record." Fed. R. Crim. P. 12(d). But "Rule 12[(d)] does not require detailed findings of facts as long as the essential basis of the court's decision is apparent." *Toro-Pelaez*, 107 F.3d at 824. The district court's findings satisfied this standard. Those findings were expressed as follows:

> Officer Perry goes on the train. It's consensual. He doesn't see a bag there. . . . Agent Perry gets off the train, comes back on the train. . . and here is this green [sic] backpack, which the defendant says is not his.
>
> People around him say it's not theirs. People around him say nobody was sitting there. He brings the bag down and shows it to him and says, "Is this yours?" "No."
>
> Then it can be deemed to be abandoned by somebody . . . .
>
> So it was all consensual up to that point.
>
> This is the wildest thing I've heard in a long time: "I've got my portfolio in the bag that belongs to somebody. I have no idea who he is or where he is, but I want to get my portfolio out." So I open the bag, I take the portfolio out. Everything is consensual.

R. vol. 4 at 70-71.

Although the findings were delivered in an informal manner, the district court clearly found that Defendant's actions were consensual, that Defendant opened the backpack, and that the backpack was abandoned. Nothing more was necessary.

-7-

**B.    Abandonment**

Defendant next argues that the district court erred in ruling that the backpack had been abandoned.  Defendant concedes that the backpack was abandoned when he denied that he owned it, but contends that once he informed Perry that his portfolio was inside the backpack, he "asserted sufficient interest in the backpack to preclude treatment of it as an abandoned object."  Aplt. Br. at 19.  We are not persuaded.

"The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object."  *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997) (internal quotation marks omitted).  Regardless of an individual's subjective intent or understanding, the individual is treated as having abandoned an object if it would be unreasonable in the circumstances for the person to have an expectation of privacy with respect to that object.  *See United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995) (although defendant "clearly intended to return and retrieve the bag," in order for the bag not to be considered abandoned, he had to "show more than his subjective intent"—he had to demonstrate that his expectation of privacy was "one that society would recognize as *objectively* reasonable") (internal quotation marks and ellipsis omitted).

As we proceed to explain, Defendant has failed to establish the reasonableness of any subjective expectation of privacy he may have had. Because the facts material to that issue are undisputed, our review is de novo. *See Garzon*, 119 F.3d at 1449.

By affirmatively denying to Perry that he owned the backpack, Defendant lost any objectively reasonable expectation of privacy in the backpack as a whole. To deny ownership is to announce to the world, "you want it, you can have it, as far as I'm concerned." Having made that announcement, Defendant could not reasonably expect Perry to recognize that he had a privacy interest in the backpack.

To circumvent this obvious proposition, Defendant relies on a wrinkle in this case—he claimed ownership of an object within the backpack. He argues:

> It seems clear that society would grant [Defendant's] expectation to be objectively reasonable in his own *portfolio*. [Defendant] urges that his expectation should encompass the *backpack* because it contained his portfolio. It is true that opening the backpack would not *necessarily* include opening the portfolio. But because the one contains the other, opening of one is a step toward opening the other.

Reply Br. at 3.

We do not share Defendant's view. Defendant's property and privacy interests in the portfolio could be, and were, fully protected by simply delivering

-9-

it to him without inspection of its contents.  He had no objectively reasonable expectation of privacy in the remainder of the backpack's contents.

We addressed an analogous argument in *United States v. Blaze*, 143 F.3d 585 (10th Cir. 1998).  In that case the defendant sent two men on a trip to California from Denver in a car that he had rented.  He placed his locked briefcase in the trunk of the car before the two men departed.  *Id.* at 588.  A police search of the car and briefcase yielded evidence incriminating the defendant, and he moved to suppress the evidence.  In explaining why the defendant lacked a protectable expectation of privacy in the car, we stated that "[w]hile the location of [the defendant's] briefcase may affect his expectation of privacy in the search of the briefcase, it has no bearing on his expectation of privacy regarding the search of the car." *Id.* at 591.  We concluded that the defendant had "surrendered the car to his friends to drive to California," and therefore "abandoned his privacy interest in the car as a whole." *Id.*  Nonetheless, because the defendant had "evidenced a clear intent to retain a privacy interest in the contents of the briefcase," we held that he maintained a reasonable expectation of privacy in it and could challenge the search of the briefcase.  *Id.*

Here, Defendant likely had a reasonable expectation of privacy in his portfolio.  But that expectation of privacy in the portfolio did not alter whether he had a reasonable expectation of privacy in the backpack.  Accordingly, the district

court did not err in concluding that Defendant had abandoned the backpack as a whole.

We need not address Defendant's arguments that Perry was the one who opened the backpack and that he did not voluntarily consent to the search of the backpack. Because the backpack was abandoned, it is immaterial who opened it, or whether Defendant gave consent to search. *See United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993) ("A warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment.").

## III. DISTRICT COURT'S COMMENTS TO THE JURY

Defendant asserts that the district court "crossed acceptable bounds when it spoke with the jurors about [his] confession, prior conviction, and additional 'background' about the case," and violated ABA Model Code of Judicial Conduct Canon 3(B)(10) by "impair[ing] a juror's ability to be fair and impartial in a subsequent case." Aplt. Br. at 28 (quoting *United States v. Quesada-Bonilla*, 952 F.2d 597, 600 (1st Cir. 1991) (quoting ABA Model Code of Judicial Conduct Canon 3B(10) and commentary)). Defendant further asserts that the district court violated ABA Standard for Criminal Justice 15-4.3 by expressing an opinion on Defendant's guilt, and making statements that could affect a juror's future service. Aplt. Br. at 28. Although conceding that the district court's remarks "do not warrant reversal of [his] conviction," he contends that the comments require

resentencing because they demonstrate that he was denied his right "to a fair sentencing by an impartial judge." Aplt. Br. at 29-30. Defendant specifically argues that the district court's comments demonstrate that it improperly failed to consider an acceptance-of-responsibility adjustment. According to Defendant, "the court prejudged the sentencing issues and . . . failed to exercise its discretion on the acceptance of responsibility adjustment." Reply Br. at 6.

Because Defendant did not object below to the district court's comments, we review these claims for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Price*, 265 F.3d 1097, 1107 (10th Cir. 2001).

Applying the plain-error standard, we conclude that the district court's comments do not require resentencing. Even if the comments were improper, concern about prejudice to future defendants is irrelevant to *Defendant's* conviction or sentence. We will not set aside a defendant's sentence on the ground that the judge's remarks might prejudice a future defendant. The prejudice must be to the defendant himself. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); *United States v.*

-12-

*Garcia*, 78 F.3d 1457, 1466 (10th Cir. 1996) (error in sentencing procedure not ground for reversal when defendant "fail[ed] to prove any prejudice whatsoever"); *cf. Doyle v. Oklahoma Bar. Ass'n*, 998 F.2d 1559, 1566 (10th Cir. 1993) ("one does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be *directly* injured by its deprivation"). We therefore need not consider whether the court's comments violated the Canon and Standard cited by Defendant.

As for Defendant's claim that the trial judge's comments to the jury indicated bias with respect to sentencing, we note that for bias or prejudice to be disqualifying, it "must stem from an extrajudicial source," *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966), unless the judge "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 555 (1994). The judge's comments in this case were based solely on the proceedings before him, and they reflect exasperation rather than antagonism toward Defendant. *See id.* ("judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"). What the judge said simply suggested that Defendant's decision not to enter into a plea agreement was unwise, and that his decision would affect his sentence. The remarks about downward adjustment not only failed to show bias,

they were accurate.  *See* U.S.S.G. § 3E1.1 (governing grant of downward departure for acceptance of responsibility).

**IV.   CONCLUSION**

We AFFIRM the judgment below.