**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 4 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HERIBERTO GARCIA-RODRIGUEZ,

    Defendant - Appellant.

No. 04-8047

(D. Wyoming)

(D.C. No. 03-CR-61-D)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** , **ANDERSON** , and **BRISCOE** , Circuit Judges.

---

Heriberto Garcia-Rodriguez ("Garcia-Rodriguez") was convicted following a jury trial of one count of possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). He was sentenced to life imprisonment under 21 U.S.C. §§ 841 and 851 because he had two prior felony drug convictions. We AFFIRM his conviction and sentence.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

On the afternoon of February 16, 2003, Wyoming Highway Patrolman Ben Peech ("Peech") stopped Garcia-Rodriguez on Interstate 80 between Cheyenne and Pine Bluffs. The day was overcast, and Garcia-Rodriguez had turned on his headlights. Peech pulled over Garcia-Rodriguez's sports utility vehicle because one of the headlights was not working, and he wished to issue a warning or a "fix-it" ticket.

Peech, however, testified that he became suspicious when he approached the vehicle and began talking to the defendant. He noticed that there were four air fresheners in the vehicle, two in the front and two in the back, and a strong smell of air freshener. Peech asked Garcia-Rodriguez for his driver's license, vehicle registration, and proof of insurance. The defendant was unable to produce a driver's license and told Peech that he had lost his wallet and had no form of identification. Garcia-Rodriguez later produced a wallet with a money order inside. The money order contained the name Raul Orosco and a Long Beach, California, address. The defendant claimed that he was Orosco. The officer ran a driver's license check with that name and a birth date provided by Garcia-Rodriguez, but found nothing. The defendant then stated that the name was spelled wrong and should have been Orozco. With the new spelling, dispatch was able to find a valid driver's license; however, the license contained a physical

description of the licensee that did not match the defendant. Peech also noticed that the registration and insurance card were not issued in defendant's alleged name and that they were issued from states other than California. When asked about this, Garcia-Rodriguez stated that the car was borrowed from a friend. Peech testified that Garcia-Rodriguez acted very nervous during the encounter and was sweating, shaking, and breathing hard.

Peech asked the defendant about his travel plans, and defendant indicated that he was en route to Des Moines, Iowa, to visit his children. Peech testified that most of his conversation with the defendant took place in English. At one point, Peech asked Garcia-Rodriguez if he spoke English, and Garcia-Rodriguez responded, "Yeah, a little bit."

Peech then gave defendant his papers back, along with a copy of the "fix it" ticket. He testified that he told the defendant something to the effect of "good luck" or "have a safe trip." Garcia-Rodriguez began walking back to his own car, but the officer asked if he would answer a few more questions. The defendant consented. During this conversation, the defendant denied that he had anything illegal in his SUV. Peech then asked the defendant, first in English, then in Spanish, if he would consent to having his vehicle searched. Defendant agreed, and Peech began examining the back end of the SUV. Peech testified that it looked as if someone had tampered with the vehicle's molding, and he retrieved a

set of tools from his patrol car and began dismantling the back portion of the vehicle. Peech discovered a concealed compartment containing two packages of what was later confirmed to be methamphetamine. Garcia-Rodriguez was arrested.

Trooper Peech then transported the defendant and his vehicle to a Wyoming Department of Transportation facility in Cheyenne where the SUV could be thoroughly searched. Officer Shawn Puente of the Cheyenne Police Department arrived and advised the defendant of his Miranda rights in English. After reading each right, the officer asked Garcia-Rodriguez if he understood, and he responded that he did. Shortly thereafter, Garcia-Rodriguez stopped responding to questions and officers arranged to have a Spanish-speaking officer translate. The translator did not re-advise the defendant of his Miranda rights in Spanish. During the twenty-five minute interview, Garcia-Rodriguez admitted that he was transporting methamphetamine from Long Beach to Des Moines and said he was to be paid $7000 for making the trip. Officers discovered an additional thirteen packages of methamphetamine in the rear wheel-well area of the vehicle. It was later determined that Garcia-Rodriguez was transporting approximately 13.3 pounds of methamphetamine.

On March 19, 2003, Garcia-Rodriguez was charged by indictment with one count of possession of methamphetamine with intent to distribute. He pleaded not

-4-

guilty to the charge.  On September 8, 2003, the prosecutor filed an information pursuant to 21 U.S.C. § 851 to inform the defendant that the prosecution was aware of his two prior felony drug convictions and would seek a life sentence. Plea negotiations failed and the case went to trial.

Garcia-Rodriguez asked his trial attorney to file a motion to suppress the fruits of the search of his vehicle.  The trial attorney declined to do so because he did not believe grounds existed for such a motion.  On December 22, 2003, approximately two weeks before trial was to begin, the defendant sent a handwritten letter to the judge requesting new counsel.  The request was denied in a Minute Order that same day.  The issue was again raised at the beginning of trial.  The district court again refused to substitute counsel because he had already allowed Garcia-Rodriguez one substitution of counsel and because he found good cause did not exist.  A jury found the defendant guilty of the single count in the indictment.  He was sentenced on April 16, 2004, to life imprisonment, ten years of supervised release should he ever be released, and a $1000 fine.

Garcia-Rodriguez appeals his conviction, arguing (1) that the search of his vehicle was illegal because the initial stop was not justified and because he was illegally detained; (2) his admissions to the officers were not voluntary because he did not understand his    Miranda  rights, which were read to him only in English; and (3) the district court erred by failing to appoint substitute counsel.  He also

challenges his sentence, arguing that the district court failed to comply with the procedural requirements of § 851, that there was insufficient evidence to support the § 851 enhancement, and, finally, that the sentence violated Blakely v. Washington, 124 S. Ct. 2531 (2004).

## DISCUSSION

### A.

**1.    Search of Garcia-Rodriguez's Vehicle**

Garcia-Rodriguez first argues that the district court should have sua sponte suppressed the evidence found in the search of the vehicle because the initial stop was not justified and he was thereafter illegally detained. As noted above, no motion to suppress was filed in the district court. Fed. R. Crim. P. 12(b)(3)(C) provides that a motion to suppress evidence "must be raised before trial." See also United States v. Meraz-Peru, 24 F.3d 1197, 1198 (10th Cir. 1994) ("A motion to suppress evidence must be raised prior to trial; the failure to so move constitutes a waiver, unless the district court, in its discretion, grants relief from the waiver for cause shown."). Notwithstanding this rule, our cases have gone on to analyze this issue under the plain error standard, which requires "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States

v. Burbage, 365 F.3d 1174, 1180 (10th Cir.), cert. denied, 125 S. Ct. 510 (2004) (further quotation omitted). However, "[a] reliable appellate determination concerning the issues inherent in the stop of [the defendant], [and] his subsequent investigative detention . . . is not possible in the absence of factual findings." Meraz-Peru, 24 F.3d at 1198. Thus, in such a case, the district court commits clear or obvious error only if the factual finding desired by the defendant is the "*only one* rationally supported by the record below." Id. (emphasis added) (further quotation omitted).

We examine the defendant's arguments with this rigorous standard in mind. Garcia-Rodriguez first asserts that the initial stop for his non-working headlight was not justified because it was the middle of the day when he was stopped and drivers were not required to have their lights on. Garcia also points out that another trooper observed the broken headlight earlier and elected not to stop him.

We analyze the constitutionality of traffic stops in the same manner that we analyze investigative detentions. "To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). In Botero-Ospina, we

adopted our current standard for analyzing the first inquiry: "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or *equipment violation* has occurred or is occurring." Id. at 787 (emphasis added). "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated '*any one of the multitude of applicable traffic and equipment regulations*' of the jurisdiction." Id. (emphasis added) (quoting Delaware v. Prouse, 440 U.S. 648, 661 (1979)); see also Whren v. United States, 517 U.S. 806, 819 (1996) (probable cause to believe that defendant violated the traffic code renders the stop reasonable under the Fourth Amendment).

Here, Trooper Peech stopped Garcia-Rodriguez based on an observed equipment failure which was a violation of Wyoming law.[1] There is nothing in that law that states that a motorist can only be pulled over at night for a headlamp violation. Peech's observation therefore satisfied reasonable suspicion and the initial stop was justified. See United States v. Vercher, 358 F.3d 1257, 1263

---

[1]See Wyo. Stat. Ann. § 31-5-901(a) ("It is a misdemeanor for any person to drive or move . . . on any highway any vehicle . . . which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as required in this act . . . ."); Id. § 31-5-912(a) ("A motor vehicle shall be equipped with at least two (2) head lamps with at least one (1) on each side of the front of the motor vehicle, which head lamps comply with the regulations of the superintendent.").

-8-

(10th Cir. 2004) (traffic stop valid where defendant violated Kansas statute prohibiting following too closely); United States v. Bustillos-Munoz, 235 F.3d 505, 512 (10th Cir. 2000) (stop justified where defendant's headlights "shined brightly in the rear-view mirror of [the trooper's] patrol car, causing him to believe the driver . . . failed to dim his high-beam headlights in violation of Colorado statutory law"); Botero-Ospina, 71 F.3d at 788 (upholding stop where officer observed vehicle swerving from lane to lane, in violation of law).

Next, Garcia-Rodriguez contends that the detention exceeded the scope of the stop and was therefore illegal. He argues that even though Trooper Peech gave him his paperwork back, he did not consent to further questioning because Peech never told him he was "free to go." He further contends that even though Peech acted as though he was going to let him go, in actuality he would not have allowed him to leave.

"A driver must be permitted to proceed after a routine traffic stop if a license and registration check reveal no reason to detain the driver unless the officer has reasonable articulable suspicion of other crimes or the driver voluntarily consents to further questioning." United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000). Reasonable suspicion or consent therefore allows an officer to legally extend a traffic stop beyond its initial scope. Id.

Here, Garcia-Rodriguez was not illegally detained because Trooper Peech had both articulable suspicion of criminal activity and valid consent to continue the conversation. Reasonable articulable suspicion arose when Peech noticed the overuse of air fresheners, which law enforcement know are commonly employed to mask the strong smell of methamphetamine, and when the defendant did not have any identification on him. Peech also had reason to be suspicious when the defendant supplied him with registration and insurance not bearing his name, and when Garcia-Rodriguez acted nervous.

Furthermore, valid consent was obtained after Peech returned Garcia-Rodriguez's documentation and told him "good luck" or "have a safe trip." These actions and words indicated to the defendant that he was free to leave, and Garcia-Rodriguez indeed began walking back to his vehicle. It was only then that Peech asked Garcia-Rodriguez if he would answer more questions. It is irrelevant that Peech actually would not have let the defendant go, as long as the defendant consented while believing he was free to leave. Moreover, Peech need not have specifically told the defendant that he was "free to go" because his other words were of the same effect. Id. at 1177.

Garcia-Rodriguez has therefore failed to demonstrate either an illegal stop or detention, and he has fallen far short of meeting the arduous standard we must

-10-

employ in this case, as the facts here "are hardly unanimous that the encounter was unconstitutional." [2] Meraz-Peru, 24 F.3d at 1198.

## 2.    Voluntariness of Garcia-Rodriguez's Statement

Garcia-Rodriguez next argues that the district court erred in failing to suppress his admissions to officers that he was transporting the drugs from California to Iowa for $7000. He contends the statements were not voluntary because he speaks very little English and officers read him his Miranda warnings in English.

After a hearing on the matter, and after reviewing a videotape of the conversation between Peech and Garcia-Rodriguez at the stop, the district court found that the statement of Miranda rights read to the defendant was no more complicated than the conversation at the time of the stop, which was primarily in English. The court concluded that "based on that assessment of the tape [of the stop] and the ability of the defendant to converse in English, it stretches credulity not a bit to believe that he also understood those four fundamental [ Miranda ] questions read to him by Officer Puente before he was examined." Tr. of Jury

---

[2]Because we have concluded that Peech did not illegally detain the defendant, we need not reach Garcia-Rodriguez's argument that the illegal detention tainted the consent to search the vehicle.

-11-

Trial, R. Vol. 4 at 301-02. The court therefore permitted the jury to hear Garcia-Rodriguez's inculpatory statements.

We review the voluntariness of a confession de novo. United States v. Lugo, 170 F.3d 996, 1003 (10th Cir. 1999). We accept the district court's underlying findings of facts unless they are clearly erroneous. Id.

Garcia-Rodriguez asserts that the district court erred because the videotape clearly shows he had difficulty communicating in English, causing Trooper Peech on occasion to revert to speaking in Spanish. He also argues that the officers could have easily re-advised him of his Miranda rights in Spanish after the Spanish-speaking officer arrived to translate.

Having independently reviewed the record in this case, including the videotape of the stop, we conclude that the district court did not clearly err in determining Garcia-Rodriguez understood enough English to comprehend his Miranda advisement. The tape of the stop clearly shows the defendant responding appropriately to Peech's questions, often in full sentences. See Valdez v. Ward, 219 F.3d 1222, 1231 (10th Cir. 2000) (trial testimony, response to interrogatories, and interaction with officers demonstrated the defendant spoke sufficient English to have voluntarily consented to search); Lugo, 170 F.3d at 1004 ("Although it would have been preferable to give [defendant] a Miranda warning in Spanish, the record indicates that [defendant] indicated to Trooper Shields that he understood

those rights as they were being read to him in English, and responded to all questions in English."); United States v. Toro-Pelaez, 107 F.3d 819, 826 (10th Cir. 1997) ("[T]he record indicates that [defendant] spoke to the troopers in English, and that when he did invoke his Miranda rights, the very words he used suggest his understanding of those rights."). We conclude that the district court properly allowed the jury to hear Garcia-Rodriguez's admissions. [3]

### 3. Substitution of Counsel

Garcia-Rodriguez's final challenge to his conviction is that the district court should have allowed him to obtain new trial counsel. He argues that there was good cause for the substitution and also contends that the district court erred by not conducting an in camera hearing with him to discuss his reasons for dissatisfaction with his attorney. "We review a district court's refusal to substitute counsel for an abuse of discretion." United States v. Beers, 189 F.3d 1297, 1302 (10th Cir. 1999) (further quotation omitted).

---

[3]Garcia-Rodriguez argues secondarily that the circumstances of his detention and questioning rendered his statements involuntary. Defendant was held for about an hour and fifteen minutes before being questioned. During the interview, which was held at a Wyoming Department of Transportation facility instead of a police station, Garcia-Rodriguez was standing, sometimes leaning against a vehicle, and was handcuffed in the front. He was permitted to take one bathroom break and one smoking break. We disagree with the defendant and conclude that these circumstances were not unduly oppressive and did not coerce defendant's admissions.

To warrant a substitution of counsel, "the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict. United States v. Anderson , 189 F.3d 1201, 1210 (10th Cir. 1999) (further quotation omitted). A district court should make "formal inquiry" into the defendant's reasons for requesting substitution of counsel. Id. Good cause for substitution of counsel consists of more than a disagreement about trial strategy. United States v. Lott , 310 F.3d 1231, 1249 (10th Cir. 2002). The timeliness of the defendant's substitution motion is also considered in determining whether the district court abused its discretion. Beers , 189 F.3d at 1302.

As indicated, approximately two weeks before trial was to begin, the defendant sent a handwritten letter to the judge requesting new counsel, which request was denied. The issue was again raised at the beginning of trial. At a hearing held on the matter, the defendant directly addressed the court and gave the following reasons for his substitution request: the attorney did not file a motion to suppress the evidence obtained in the search, he failed to adequately communicate, he failed to provide requested documents, and he was "working for the prosecution." After discussion with the defendant, the district court determined that none of the contentions had merit. The court noted that it had already allowed one substitution of counsel and that both of Garcia-Rodriguez's

-14-

defenders were highly qualified to handle the case.  The judge stated:  "I'm not persuaded that you have any cause to be concerned about your lawyer, sir.  It's obvious I'm not going to please you in the appointment of your lawyer and my decision [is] to make sure he stays as a lawyer in this case."  Tr. of Jury Trial, R. Vol. 4 at 179.

The court did not abuse its discretion in declining to appoint substitute counsel.  Counsel's decision not to file a motion to suppress does not establish good cause, because "[t]he Sixth Amendment provides no right to counsel blindly following a defendant's instructions."  United States v. Padilla, 819 F.2d 952, 956 (10th Cir. 1987) (substitution unwarranted where counsel would not structure a defense as defendant directed);  see also Beers, 189 F.3d at 1302 (substitution unwarranted where counsel, in contravention of defendant's requests, would not put on evidence that he believed was damaging to defendant).  And as discussed supra, we are in agreement with trial counsel that such a motion would likely not have succeeded.  Furthermore, in response to Garcia-Rodriguez's complaints, the trial attorney told the court he had visited the defendant numerous times in jail, had employed an interpreter at the court's expense to help with these visits and to translate the Division of Criminal Investigation and police reports in the case, and had provided the defendant with the documentation that was available.  The trial

judge was also faced with this request just as trial was to begin, which renders the request untimely.

Moreover, the court was under no obligation to conduct the hearing in camera. The only authority the defendant cites for this proposition is Anderson, in which the court merely noted that an in camera hearing was held. Anderson, 189 F.3d at 1210. There is no suggestion in that case that a district court is ever required to hold such a hearing, and defendant's counsel on appeal could point to no other authority for the proposition when asked to do so at oral argument. Finally, nothing in the record indicates that the defendant was not candid at the hearing held in front of his attorney, or that he would have said anything different at an in camera proceeding. Garcia-Rodriguez's argument therefore fails.

**B.**

**1.    Garcia-Rodriguez's Sentence**

Garcia-Rodriguez raises several challenges to the life sentence he received because he had two prior felony convictions.[4] First, he argues that the district court did not follow the procedural requirements of 21 U.S.C. § 851, and, second,

---

[4]The information filed by the government in this case states that the defendant was convicted of selling cocaine on September 9, 1992, in the Superior Court of California, County of Fresno, and was convicted of the sale and purchase of heroin on July 17, 2000, in the Superior Court of California, County of San Francisco.

he argues that there was insufficient evidence to support the finding that he had twice been previously convicted of a felony drug offense. "The legality of a sentence presents a question of law which we review *de novo*." United States v. Gonzalez-Lerma, 71 F.3d 1537, 1540 (10th Cir. 1995). [5] Third, Garcia-Rodriguez contends that his sentence violated Blakely v. Washington, 124 S. Ct. 2531 (2004). Because this argument was not raised below, we review only for plain error.

First, Garcia-Rodriguez asserts that the district court failed under § 851 to afford him "an appropriate evidentiary hearing to establish that the prior convictions should be used in calculating the instant offense." Appellant's Br. at 20. Section 851 provides that when the United States files an information stating the prior convictions to be relied upon, the court shall after conviction but before pronouncement of sentence inquire of the defendant "whether he affirms or denies that he has been previously convicted as alleged in the information, and shall

---

[5]At the sentencing hearing, when asked by the judge whether he affirmed or denied his prior convictions, Garcia-Rodriguez responded, "Not the way [the United States attorney] said that." The court said that it would take the defendant's response "as a challenge to the United States' position that these are prior convictions." Tr. of Sentencing Hr'g, R. Vol. 2 at 28. By treating the defendant's response as a denial, the court noted "[t]hat way he reserves any right he may have to contest that on appeal." Id. at 30. We conclude that the defendant has preserved his first two sentencing arguments. However, because we do not view his statement as relating in any way to his Blakely argument, we deem that argument unpreserved.

-17-

inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). If the defendant denies any prior conviction in the information,

> he *shall file a written response* to the information. A copy of the response shall be served upon the United States attorney. The court shall *hold a hearing to determine any issues raised by the response* which would except a person from increased punishment. . . . The hearing shall be before the court without a jury and either party may introduce evidence.

Id. § 851(c) (emphasis added). In this case, the defendant failed to file a written response to the government's information. The defendant's attorney did not believe that there were any reasonable grounds upon which to object. Section 851(c) clearly states that a hearing is held specifically to address issues raised by the written response. Thus, the court was under no obligation to hold a hearing in this case because the defendant had ample opportunity to object in writing but failed to do so and essentially conceded that any denial would be frivolous.

Even so, we note that the district court at Garcia-Rodriguez's sentencing hearing received multiple evidentiary exhibits from the government proving that Garcia-Rodriguez indeed had two prior drug felonies. The sentencing hearing was thus, in essence, the evidentiary hearing that the defendant argues was not held. Presumably, if Garcia-Rodriguez had any evidence to rebut the prior

convictions, it would have been presented at that time. The district court did not fail to comply with the requirements of § 851. [6]

Garcia-Rodriguez's second challenge to his sentence is that there was insufficient evidence to support the judge's finding of the two prior drug felonies beyond a reasonable doubt. The two California convictions were obtained while Garcia-Rodriguez was using the aliases Oreal Torres Zuniga and William Miranda Colon. Garcia-Rodriguez argues that the "only evidence offered to support the conclusion that [he] was the same person who was convicted of the other crimes under the two aliases was the report of a fingerprint expert." Appellant's Br. at 19.

---

[6]As noted in footnote five, when the defendant was asked just prior to sentencing whether he denied the allegations of prior convictions in the information, he gave a vague response that the district court took as a denial. The government concedes in its brief that the district court should have asked the defendant earlier, perhaps after the jury verdict, whether he denied the convictions, which would have given the defendant greater opportunity to file a written response in advance of a hearing on the issues. However, this slight procedural irregularity does not change the fact that no written response to the information was ever filed, and the defendant had ample time but never expressed a wish to do so, even after he denied his previous convictions. The government filed the information in September of 2003, and sentencing was not held until April 16, 2004. Furthermore, after the jury verdict was returned, the court informally discussed § 851 issues with the defendant and his attorney, and the defendant could have let the court know of any objections at this time. The defendant's attorney maintained throughout these proceedings that there were no reasonable grounds upon which to object. Under these circumstances, we conclude that the district court did not err in failing to hold a formal evidentiary hearing. Even assuming *arguendo* that this slight irregularity was error, it was clearly harmless. See Gonzalez-Lerma, 71 F.3d at 1541.

Contrary to these assertions, the government presented ample evidence that the defendant was the same person as previously convicted. In addition to the report of the fingerprint expert, the government presented the actual fingerprint cards that were compared, certified copies of the records of the prior convictions, photographs taken at the time of the prior convictions, and a transcript of the plea hearing in the defendant's second California case in which the defendant states that his true name is "Heriberto Garcia." All of these exhibits point to the inescapable conclusion that Zuniga, Colon, and Garcia-Rodriguez are one and the same person, and the defendant did not object to the admission of any of this evidence.

Moreover, as the government points out, the defendant twice made statements at his sentencing hearing indicating that he indeed was the defendant in the two prior cases. At one point, he stated, "on the first case, I completed probation; and when I went for the second case, they brought up the first case." Tr. of Sentencing Hr'g, R. Vol. 2 at 22. Later, when discussing the failed plea negotiations with the court, Garcia-Rodriguez stated, "the attorney [I] had before told me that the cases I had in California were not going to hurt me at all." Id. at 28. The judge also relied on the fact that the probation department, in preparing the presentence report, had independently of the prosecution found the reports of the two prior convictions. The prosecution therefore presented overwhelming

evidence of the convictions, and Garcia-Rodriguez's second challenge to his sentence fails. [7]

Finally, the defendant argues that his sentence violates Apprendi v. New Jersey, 500 U.S. 466 (2000), and Blakely v. Washington, 124 S. Ct. 2351 (2004), which hold that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.[8] Again, we review this argument for plain error. United States v. Booker, 125 S. Ct. 738, 769 (2005). In his brief, the defendant argues that "when there is a question of fact as to whether the prior conviction should be attributed to the defendant, the constitution requires that the United States prove that issue beyond a reasonable doubt." Br. of Appellant at 20-21. Garcia-Rodriguez thus apparently argues that under Apprendi and Blakely, the court was required to make its findings beyond a reasonable doubt.

---

[7]The defendant also argues that he did not have an opportunity to question the fingerprint expert's findings because she did not testify at the sentencing hearing. We disagree that the defendant should have had this opportunity because the Rules of Evidence do not apply to sentencing hearings. Fed. R. Evid. 1101(d)(3).

[8]When Garcia-Rodriguez raised Blakely and Apprendi to this court, the Supreme Court had not yet issued United States v. Booker, 125 S. Ct. 738 (2005). However, we view raising Blakely as sufficient to raise an argument under Booker, which applied the holdings of Blakely to the United States Sentencing Commission, Guidelines Manual.

The record demonstrates that this standard was used. Indeed, this standard was required by 21 U.S.C. § 851(c), which provides, "the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact." Before imposing the life sentence, the court stated:

> The Court finds, as a matter of law, that the United States has comported with all the provisions of 21 United States Code 851; that there was no objection filed by the defendant. Indeed no plausible objection could likely be made, given the evidence that has been provided which is *certainly proof beyond a reasonable doubt* for purposes of this hearing. The Court is satisfied the authenticated documents clearly establish the two prior felony convictions.

Tr. of Sentencing Hr'g, R. Vol. 2 at 36 (emphasis added). The court therefore did not commit error, much less plain error, because it made its findings by the correct standard.

To the extent that defendant's brief can be read as challenging the judge-made finding that Garcia-Rodriguez and his aliases were the same person, and to the extent that counsel contended at oral argument that 21 U.S.C. §§ 841 and 851 are unconstitutional under Booker because they allow judicial findings of fact, these arguments are foreclosed by abundant authority. Under Apprendi, Blakely, and Booker, it is well established that a judge may find the fact of a prior conviction.[9] Blakely, 124 S. Ct. at 2536; Booker, 125 S. Ct. at 756.

_____

[9]We note that in the recent case of Shepard v. United States, No. 03-9168, 544 U.S. __, 2005 WL 516494 (March 7, 2005), Justice Thomas stated that a

(continued...)

Additionally, this circuit recently concluded that this exception permits a district court to find facts underlying a prior conviction that are "intimately related" to the whether a prior conviction exists without violating the Sixth Amendment.   United States v. Moore  , No. 04-8078, __ F.3d __, 2005 WL 668813, at *5  (10th Cir. Mar. 23, 2005) (judge properly made the determination that prior convictions were "violent felonies" subjecting defendant to increased punishment under recidivist statute).  The question of whether the defendant is the same person as the one who committed the prior crimes is just such an "intimately related" inquiry.   See also  United States v. Burgin  , 388 F.3d 177 (6th Cir. 2004), cert. denied , __ S. Ct. __, 2005 WL 437775 (2005) (subsidiary finding under recidivist statute that prior offenses were committed on "different occasions" need not have been submitted to a jury);   United States v. Santiago  , 268 F.3d 151, 156 (2d Cir. 2001) (same);   United States v. Wilson  , 244 F.3d 1208, 1216-17 (10th Cir. 2001) (fact of prior convictions underlying enhancements in 21 U.S.C. §

---

[9](...continued)
majority of the Court now recognizes that Almendarez-Torres v. United States, 523 U.S. 244 (1998), which established that recidivism is a sentencing factor that need not be determined by a jury, was wrongly decided.  Justice Thomas also predicted that Almendarez-Torres would be overturned sometime in the near future.  Shepard, 2005 WL 516494, at *9 (Thomas, J., concurring).  Nonetheless, "we are bound by existing precedent to hold that the Almendarez-Torres exception to the rule announced in Apprendi and extended to the Guidelines in Booker remains good law."  United States v. Moore, No. 04-8078, __ F.3d __, 2005 WL 668813, at *3 (10th Cir. Mar. 23, 2005).

841(b)(1) need not be made by a jury). No error occurred in this case because this finding of fact need not have been submitted to the jury. [10] Defendant's life sentence stands.

## CONCLUSION

We AFFIRM Garcia-Rodriguez's conviction and sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

---

[10]In this case, we need not examine whether the district court committed non-constitutional Booker error by applying the Sentencing Guidelines in a mandatory, as opposed to discretionary, fashion. Booker, 125 S. Ct. at 769. The defendant did not raise this argument, and it would not have been successful in any event. While the court calculated Garcia-Rodriguez's sentencing range under the Guidelines as 360 months to life, as noted, the life sentence was imposed pursuant to and because of the statutory requirements of 21 U.S.C. §§ 841 and 851.