**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES DURAN, also known as
James Joseph Duran,

Defendant-Appellant.

No. 06-4003
(D.C. No. 1:03-CR-139-DAK)
(D. Utah)

**ORDER AND JUDGMENT** [*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

Defendant James Duran was convicted by a jury of distribution of fifty

grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1),

possession of a firearm and ammunition by a convicted felon in violation of

18 U.S.C. § 922(g)(1), possession of a firearm and ammunition following a

domestic violence conviction in violation of 18 U.S.C. § 922(g)(9), and

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Defendant's appointed counsel filed an opening brief challenging the sufficiency of the evidence for defendant's conviction for distribution of fifty or more grams of methamphetamine and arguing that defendant's due process rights were violated because the Government failed to provide Jencks Act material from one of its witnesses, as required by 18 U.S.C. § 3500. Defendant then filed a request seeking permission to file a pro se supplemental brief. In his supplemental brief, defendant raises six additional claims of error. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence de novo. *United States v. Muessig*, 427 F.3d 856, 860-61 (10th Cir. 2005), *cert. denied*, 126 S. Ct. 1446 (2006). We will affirm a conviction "if, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences therefrom, a reasonable jury could have found the defendant guilty beyond a reasonable doubt."[1] *Id.* at 861. Defendant contends that the evidence introduced

_____

[1] Defendant failed to move for judgment of acquittal pursuant to Fed. R. Crim. P. 29, which would generally mean that this court would review his claim for plain error. *United States v. Duran*, 133 F.3d 1324, 1335 n.9 (10th Cir. 1998). We have noted, however, that "review under the plain error standard . . . and a review of sufficiency of the evidence usually amount to largely the same exercise." *Id.* We would reach the same conclusion under either standard.

at trial was insufficient to support his conviction for distributing fifty or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). "Pursuant to the plain language of § 841(a)(1), the essential elements of a *prima facie* case of distribution of a controlled substance are: (1) knowing or intentional; (2) distribution; (3) of a controlled substance." *United States v. Santistevan*, 39 F.3d 250, 255 (10th Cir. 1994). We conclude, as set forth below, that there was sufficient evidence to support defendant's conviction.

Officer Kyle Jeffries testified that he engaged an informant, Brian, to purchase two ounces of methamphetamine from Brian's supplier, Alan Wade Clapp. Brian was wearing a wiretap and Officer Jeffries heard Clapp tell Brian that he did not have the drugs and that he needed to go to Ogden, Utah, to get more methamphetamine from another person. Clapp told Brian he would call him when he returned from Ogden and they would complete the purchase. Officer Jeffries followed Clapp to Ogden. After a few brief stops along the way at his lawyer's office, a Wendy's fast food restaurant, and a convenience store, Clapp eventually arrived at defendant's house. Another car arrived at the same time as Clapp's car.

Clapp testified at trial and confirmed the officer's testimony, including his initial meeting with Brian, his trip to Ogden to purchase methamphetamine from defendant, and his stops on the way to defendant's house. Clapp also detailed the drug transaction, including waiting in defendant's living room while defendant

-3-

went to another room to get the drugs, watching defendant weigh out the methamphetamine on a scale, then transferring the drugs from a gallon-size Ziploc bag into small baggies and back into the large Ziploc bag. Defendant then gave the Ziploc bag containing the methamphetamine to Clapp and also provided Clapp with a Crown Royale bag in which Clapp placed the large Ziploc bag filled with methamphetamine. Clapp then paid defendant and left the house. Clapp also testified about his actions after he departed defendant's house, which was consistent with the officer's testimony, including stopping a half block from defendant's house to pull the Ziploc bag out of his pants and hide it under the hood of his car, being apprehended by the police, and eventually identifying defendant as the source of the methamphetamine. Finally, Clapp identified defendant in court as the person from whom he purchased the methamphetamine.

Ignoring the detailed testimony of Clapp, defendant contends that the jury had to speculate and stack inference upon inference in order to reach a guilty verdict. Defendant's theory is that someone else sold the methamphetamine to Clapp. He points out that there was no evidence linking him to the car that pulled up next to Clapp's car outside of his house; there was no fingerprint testing done on the large Ziploc bag; there was no explanation as to how two Mexican men, who were stopped after leaving his house, came to possess $80 in marked money that had been given to Clapp by Brian; and there was no drug paraphernalia or money found at his house when the search was conducted.

This case is similar to *United States v. Johnson*, 130 F.3d 1420, 1429 (10th Cir. 1997), where the defendant was charged with distributing cocaine and defense counsel attempted to raise doubts concerning the identity of the person who sold the cocaine to the informant. The informant testified at trial that she and another person went to the defendant's house and negotiated the purchase of $40 worth of cocaine from the defendant. *Id.* We noted that law enforcement officers corroborated the informant's testimony and verified that the substances purchased were cocaine. *Id.* We concluded that there was sufficient evidence to uphold the conviction, explaining "given [the informant's] in-court identification of [the defendant] as the person she dealt with, the jury had an evidentiary basis for concluding [the defendant] was the person who sold the cocaine to [the informant]." *Id.*

Like the *Johnson* case, Clapp's testimony was substantially corroborated by a police officer, defendant stipulated that the substance was methamphetamine, and Clapp made an in-court identification of defendant as the person who sold him the methamphetamine. Although there may have been conflicting evidence introduced at trial, in conducting our review, "we do not weigh conflicting evidence nor consider the credibility of witnesses. Instead, we must simply determine whether [the] evidence, if believed would establish each element of the crime." *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004) (citation and internal quotation marks omitted). The Government presented

sufficient evidence for the jury to find beyond a reasonable doubt that the defendant knowingly or intentionally distributed a controlled substance in violation of 21 U.S.C. § 841(a)(1).

## II. Jencks Act Violation

Defendant contends that the Government violated the Jencks Act, and thus his due process rights, by failing to disclose to trial counsel alleged pre-trial debriefing statements given by Clapp to authorities concerning defendant. Although the Government points out that defendant did not make a timely request for Jencks Act material after Clapp's testimony, as required by the statute, the Government conceded that it has an open-file policy and as part of that policy it should have disclosed all Jencks Act material during discovery. The Government did produce to counsel Clapp's grand jury testimony as required by the Jencks Act. The Government contends that it does not possess any additional Jencks Act material.

Once a defendant believes that there is discoverable Jencks Act material that was not produced, he must make an affirmative request to the trial court for the production of those statements. *See United States v. Smith*, 984 F.2d 1084, 1086 (10th Cir. 1993). In *Smith*, this court agreed with the Ninth Circuit that "'the defendant must plainly tender to the Court the question of the producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry.'" *Id.* (quoting *Ogden v. United States*, 303 F.2d 724,

733 (9th Cir. 1962)).  The defendant's demand must also be "'sufficiently precise to identify the statements requested.'"  *Id.* (quoting *United States v. Wallace*, 848 F.2d 1464, 1471 (9th Cir. 1988)).  Although defendant now argues on appeal that there are Jencks Act statements that were not produced, he did not make any showing in the district court that such statements exist and he does not identify any evidence in the record before us to support a conclusion that those statements exist.  Defendant has not demonstrated that there was a Jencks Act violation.

### III.  Defendant's Supplemental Pro Se Brief

Defendant's supplemental pro se brief raises the following additional issues: (1) the judgment is void for failure to comply with jurisdictional and constitutional mandates; (2) the Government failed to invoke 18 U.S.C. § 2 and 18 U.S.C. § 846 in relation to the underlying offense charged under 21 U.S.C. § 841(a)(1); (3) the lack of adversarial testing at the trial level deprived defendant of his Sixth Amendment right to hold the Government to its burden of proof; (4) the Government's failure to prove cession of legislative and territorial jurisdiction by the union state of Utah over the location of the offenses renders the judgment void; (5) the probable cause determination relative to the search warrant was in error; and (6) the failure of the warrant and affidavit for the search warrant to list the firearms and ammunition seized constituted an unconstitutional seizure of those items.  Because defendant did not raise any of these issues in the district court, our review is limited to plain error.  *United States v. Burbage*, 365 F.3d

1174, 1180 (10th Cir. 2004). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted). Defendant has not shown plain error with respect to any of these six issues.

## IV. Conclusion

Defendant's motion to compel is DENIED. Defendant's motion to file a supplemental pro se brief is GRANTED. We AFFIRM defendant's convictions.

Entered for the Court

David M. Ebel
Circuit Judge